Arturo FLORES, et al., Appellants,

v.

MILLENNIUM INTERESTS,
LTD., et al., Appellees.

No. 04–1003.

Supreme Court of Texas.

Argued Feb. 15, 2005.

Decided Sept. 30, 2005.

Rehearing Denied March 31, 2006.

**428**

Harry Herzog, David A. Carp, Herzog Carp & McManus, William C. Wagner, and J. James Luck, Godwin Gruber LLP, Houston, for Appellant.

H. Miles Cohn, Sheiness Scott Grossman & Cohn, L.L.P., and Michelle Friery, Houston, for Appellee.

J. Ken Nunley, Nunley Davis Jolley & Hill, L.L.P., Boerne, Vincent L. Hazen, Hazen & Terrill, P.C., Bill Davis, Office of Atty. Gen., Austin, Deborah G. Hankinson, Law Offices of Deborah Hankinson PC, Dallas, for Amicus Curiae

Justice MEDINA delivered the opinion of the Court joined by Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, Justice JOHNSON, and Justice WILLETT.

This case comes to us on certified questions from the United States Court of Appeals for the Fifth Circuit asking us to construe section 5.077 of the Texas Property Code. That section requires that the seller of real property under an executory contract provide the buyer with an annual accounting statement and imposes "liquidated damages" should the seller fail to comply. The Fifth Circuit has asked the following questions about this statute:

1. If a seller under a contract for deed sends a purchaser a statement under § 5.077(a) that omits any of the applicable information listed in § 5.077(b) of the Texas Property Code, specifically in the information required by § 5.077(b)(1) or (3), or both, is the seller liable to the purchaser for $250 per day liquidated damages as set forth in § 5.077(c)?

2. If a seller under a contract for deed sends a purchaser a statement that omits information required by §§ 5.077(b)(1) and (3), must the purchaser prove actual harm or injury to recover liquidated damages under the statute?

3. In 2001, 2002, and 2003, did the statutorily defined "exemplary damages" in chapter 41 of the Texas Civil Practice and Remedies Code encompass the statutorily defined "liquidated damages" in § 5.077 of the Texas Property Code, so that to recover under § 5.077 of the Property Code a purchaser would have to comply with § 41.003 of the Civil Practice and Remedies Code?

390 F.3d 374, 376–77 (5th Cir.2004) (per curiam). The Fifth Circuit has further disclaimed "any intention or desire" that we "confine [our] reply to the precise form or scope of the questions certified." *Id.* at 377.

We conclude that the annual statements in this case were timely under section 5.077(a) and that the omission of some information required by section 5.077(b)

did not render them deficient or otherwise invoke the liquidated damages provision of section 5.077(c). We further conclude that the Legislature intended for the "liquidated damages" of section 5.077(c) to be a penalty and did not intend that a purchaser prove actual damages as a predicate to their recovery. We accordingly answer the first two questions posed by the Fifth Circuit, No, and conclude that those answers make it unnecessary to reach the third and final question.

I

Millennium Interests, Ltd. develops residential subdivisions in the Houston area, financing most of its sales either with traditional mortgages or executory contracts, also known as contracts for deed. A contract for deed, unlike a mortgage, allows the seller to retain title to the property until the purchaser has paid for the property in full. Such sales are regulated by statute which, among other things, requires that the seller provide the purchaser with an annual accounting statement on or before January 31 each year. *See* Tex. Prop.Code § 5.077. If the seller fails to send the statement on time, the statute makes the seller liable to the purchaser for "liquidated damages" and attorney's fees. *Id.* § 5.077(c).

The purchaser's statutory right to liquidated damages and attorney's fees under a contract for deed is relatively new, added in 2001, when the Legislature renumbered and revised the statutes applicable to such contracts.[1] Previously, the statute had allowed the purchaser to deduct 15% of his or her monthly payments beginning on the date on which the required information was demanded until the date on which it was provided.[2] The 2001 amendments, however, changed this to provide:

> (c) A seller who fails to comply with subsection (a) is liable to the purchaser for:
>
> (1) liquidated damages in the amount of $250 a day for each day after January 31 that the seller fails to provide the purchaser with the statement; and
>
> (2) reasonable attorney's fees.

Tex. Prop.Code § 5.077(c). These "liquidated damages" are triggered by the seller's failure to comply with subsection (a), which provides:

> (a) The seller shall provide the purchaser with an annual statement in January of each year for the term of the executory contract. If the seller mails the statement to the purchaser, the statement must be postmarked not later than January 31.

1. The 2001 amendments made the reporting requirement and other provisions regarding executory contracts applicable to Millennium's properties in Harris County. Those provisions previously had been applicable only in counties that the Texas Department of Housing and Community Affairs had determined were within 200 miles of an international border and had a below-average per capita income and an above average unemployment rate. See Act of June 17, 1995, 74th Leg., R.S. Ch. 994, § 3, 1995 Tex. Gen. Laws 4983–84 (formerly Tex. Prop.Code § 5.091), *amended by* Act of June 13, 2001, 77th Leg., R.S. Ch. 693, § 1, 2001 Tex. Gen. Laws 1319 (current

version at Tex. Prop.Code § 5.062); SENATE COMMS. ON INT'L RELATIONS, TRADE TECH., BILL ANALYSIS, Tex. S.B. 336, 74th Leg., R.S.(1995); *see also De La Cruz v. Brown*, 109 S.W.3d 73,76 (Tex.App.-El Paso 2003), *rev'd on other grounds*, 156 S.W.3d 560 (Tex.2004).

2. Act of June 17, 1995, 74th Leg., R.S. Ch. 994, § 3, 1995 Tex. Gen. Laws 4987 (formerly Tex. Prop.Code § 5.100), *amended by* Act of June 13, 2001, 77th Leg., R.S. Ch. 693, § 1, 2001 Tex. Gen. Laws 1326–27 (current version at Tex. Prop.Code § 5.077).

*Id.* § 5.077(a). Subsection (b) then lists the information that must be provided in the annual statement, which includes:

(1) the amount paid under the contract;

(2) the remaining amount owed under the contract;

(3) the number of payments remaining under the contract;

(4) the amounts paid to taxing authorities on the purchaser's behalf if collected by the seller;

(5) the amounts paid to insure the property on the purchaser's behalf if collected by the seller;

(6) if the property has been damaged and the seller has received insurance proceeds, an accounting of the proceeds applied to the property; and

(7) if the seller has changed insurance coverage, a legible copy of the current policy, binder or other evidence that satisfies the requirements of Section 5.070(a)(2).

*Id.* § 5.077(b).

In July 2000, Millennium retained Concord Servicing Corp. to perform accounting and reporting services for its financing transactions. Concord provided two annual statements to each of Millennium's customers, an "Annual Interest Statement" and an "Escrow Analysis." Unfortunately, these statements failed to include two items required by the statute, the "amount paid under the contract" and "the number of payments remaining under the contract." [3] *Id.* § 5.007(b)(1), (3).

Consequently, three purchasers sued Millennium for these omissions in their 2001 and 2002 annual statements, seeking statutory damages. At the summary judgment hearing in May 2003, these purchasers claimed that they were entitled to statutory damages greatly in excess of the purchase prices of their respective properties. The federal district court disagreed, however, rendering summary judgment for Millennium. The court concluded that:

● Millennium had timely provided annual statements to the purchasers;

● Section 5.077(c) permits the recovery of liquidated damages of $250 per day only for violation of Section 5.077(a), which requires the timely mailing of annual statements to purchasers under a contract for deed;

● Section 5.077(c) does not similarly provide for liquidated damages for violation of Section 5.077(b), which delineates the contents of an annual statement; and

● Because Section 5.077(c) does not provide for liquidated damages when a statement is timely provided, the plaintiffs were not entitled to recover in the absence of proof of actual damages.

273 F.Supp.2d 899, 901. The purchasers appealed the summary judgment in Millennium's favor to the Fifth Circuit, which certified the aforementioned questions to us.

## II

The first certified question asks whether section 5.077(c)'s liquidated damages are owed when a seller delivers a timely annual statement that omits some of the information listed in subsection (b) of that statute. The plain wording of the statute is argued in support of conflicting interpretations. The purchasers argue that because subsection (b) defines what information an "annual statement" must include, a document that does not contain this information cannot be an annual statement. Thus, the purchasers conclude that statutory

---

**3.** The annual statements also did not include the last three items relating to insurance, which is understandable because Millennium neither provided, received, nor changed insurance on these properties.

damages apply until they receive a complete annual statement, incorporating all of the information required by subsection (b). Millennium argues, on the other hand, that because the statute plainly premises statutory damages only upon the seller's failure to provide the purchaser with a timely annual statement, subsection (a), without mentioning subsection (b), that a timely annual statement may omit some of the information required by subsection (b) and not invoke the liquidated damages provision. Millennium further submits that had the Legislature intended otherwise, it would have conditioned the assessment of liquidated damages upon the seller's failure to comply with both subsections (a) and (b) of the statute.

The parties also disagree about the nature of these statutory damages. Millennium argues that these damages are penal in nature because they bear no relation to a purchaser's actual damages when receiving a late annual statement. The purchasers respond that the Legislature did not intend for them to be a penalty because it labeled the recovery as "liquidated damages."

■ The term "liquidated damages" ordinarily refers to an acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 664 (Tex.2005). The common law and the Uniform Commercial Code have long recognized a distinction between liquidated damages and penalties. *See Stewart v. Basey,* 150 Tex. 666, 245 S.W.2d 484, 485–486 (1952); Tex. Bus. & Com.Code § 2.718(a). If damages for the prospective breach of a contract are difficult to measure and the stipulated damages are a reasonable estimate of actual damages, then such a provision is valid and enforceable as "liquidated damages;" otherwise it is void as a "penalty." *Phillips v. Phillips,* 820 S.W.2d 785, 788 (Tex.1991). The purchasers therefore conclude that these damages cannot be both "liquidated damages" and a "penalty."

While we agree that this is true at common law, it does not always hold true for statutes. Aside from the 2001 amendments to the Property Code,[4] twelve Texas statutes mention liquidated damages, nine of which involve the regulation of liquidated damage provisions in contracts.[5]

4. In addition to section 5.077(c), at issue in this lawsuit, which assesses "liquidated damages" in connection with the requirement that the seller submit an annual accounting statement, section 5.079(c) assesses "liquidated damages" in connection with the requirement that the seller submit a deed upon payment of the contract.

5. *See* Tex. Agric. Code § 52.016(d)(1) (a marketing association may "fix as liquidated damages specific amounts to be paid by a member if the member breaches the marketing contract"); Tex. Bus. & Com.Code § 2.718(codifying common law treatment of liquidated damages as part of UCC); Tex. Bus. & Com. Code § 2A.103(a)(7)(iii)(in finance lease, lessee must receive statement describing any liquidated damages provided to the lessor by the person supplying the goods); Tex. Bus. & Com.Code § 2A.503(c) (permitting liquidated damages in lease agreement); Tex.Civ. Prac. & Rem.Code § 141.003(7) (in structured settlement, statement provided to payee must show "the amount of any penalties or liquidated damages payable by the payee in the event of any breach of the transfer agreement by the payee"); Tex. Gov't Code § 466.102 (state lottery commission must provide in contracts for "liquidated damages and a performance bond in an amount equal to the executive director's best estimate of the revenue that would be lost if the contractor fails to meet deadlines specified in the contract"); Tex. Local Gov't Code § 116.023(b) (if bank chosen as county depository fails to provide bond, county will retain application fee as liquidated damages); Tex. Local Gov't Code § 117.021(c) (if bank chosen as special fund county depository fails to provide bond, county will retain application fee as liquidated damages); Tex. Transp. Code

Representative here is section 2.718 of the Business & Commerce Code which codifies the common law distinction as part of Texas' adoption of the Uniform Commercial Code's article on sales.[6] The Legislature, however, has also used the term "liquidated damages" in other contexts and, on occasion, has used it when referring to a penalty.[7] For example, section 62.201 of the Labor Code imposes a civil penalty against an employer who violates minimum wage laws in the amount of "the unpaid wages plus an additional equal amount as liquidated damages." Article 6362 of the revised civil statutes imposes a penalty of "five hundred dollars as liquidated damages" payable to the shipper if a railroad charges more for a double-decked carload of sheep than for a similar shipment of cattle, but also waives "the penalties prescribed in this article" under certain circumstances.

In 2001, the Legislature amended the Property Code to add, among other things, two provisions for "liquidated damages," the provision at issue here, section 5.077(c), and section 5.079(c). This latter section assesses "liquidated damages" against a seller who fails to promptly tender a deed within 30 days after the purchaser's final payment under a contract for deed. The predecessor to section 5.079(c) imposed a "penalty" upon a seller for this same conduct, setting the penalty at $250 per day for the first 90 days and $500 per day for each day thereafter. *See* Act of June 17, 1995, 74th Leg., R.S. Ch. 994, § 3, 1995 Tex. Gen. Laws 4988 (formerly Tex. Prop.Code § 5.102), *amended by* Act of June 13, 2001, 77th Leg., R.S. Ch. 693, § 1, 2001 Tex. Gen. Laws 1327 (current version at Tex. Prop.Code § 5.079). The 2001 amendment recharacterized these penalties as "liquidated damages" but did not otherwise change the statutory formula for computing these damages. *See id.*

In *Brown v. De La Cruz*, 156 S.W.3d 560 (Tex.2004), we compared section 5.079(c) to its predecessor to aid our understanding of whether the earlier version provided a private right of action for these penalties. We held that it did not, observing that "by changing 'penalty' to 'liquidated damages' and adding a provision for attorney's fees, the Legislature changed not just the recipient but the nature of the amounts assessed." *Id.* at 565. Thus, we concluded that the 2001 amendment had created a private right of action for these statutory damages—a right that could not be inferred from the language of the original statute. *Id.* We did not decide, however, whether the assessment of "liquidated damages" in section 5.079(c) was compensatory or penal in nature, although we did note, in passing, that the severity of the statutory formula "would in many instanc-

---

§ 223.012(a)(1) (state highway department to "develop a schedule for liquidated damages that accurately reflects the costs associated with project completion delays").

**6.** "Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or non-feasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty." Tex. Bus. & Com.Code § 2.718(a).

**7.** *See* Tex. Labor Code § 62.201 (imposing civil penalty against employer violating minimum wage laws); Tex.Rev.Civ. Stat. art. 6362 (imposing civil penalty on railroad for freight overcharges); Tex.Code Crim. Proc. art. 18.20 § 16(a) (providing for the recovery of actual and punitive damages for violation of wiretapping laws "but not less than liquidated damages computed at a rate of $100 a day for each day of violation or $1000, whichever is higher").

es impose a fine far beyond the damages that a purchaser is likely to suffer." *Id.* at 566.

This observation from *Brown* is instructive here because sections 5.079(c) and 5.077(c) share a similar statutory formula for computing liquidated damages. According to Millennium's math, that formula yields liquidated damages in this case in excess of five times the value of the underlying properties. Such an award obviously bears no relation to the harm caused by a late or incomplete annual statement; in fact, these purchasers candidly admit that they have not been harmed.

We have found statutory damage schemes far less draconian than this one to be penal in nature. *See Johnson v. Rolls,* 97 Tex. 453, 79 S.W. 513, 514 (1904) (statutory liquidated damages awarded without reference to any actual loss or injury have "much the character of exemplary or punitive damages"); *The Houston & Tex. Central Ry. Co. v. H.W. Harry & Bros.,* 63 Tex. 256, 260 (1885)(to the extent that an award of statutory damage exceeds the amount necessary to compensate plaintiff's injury, "the excess is but exemplary damage"). In fact, before the 2001 amendments, there was little doubt that the Legislature also thought of these damages as a penalty. At least that is how section 5.079(c)'s predecessor referred to them. *See Brown,* 156 S.W.3d at 563 (quoting former § 5.102(b) of the Property Code). Merely changing the label for these statutory damages did not, without more, change their underlying character; they remain penal in nature.

■■■ As a penal statute, section 5.077 must be strictly construed. *See id.* at 565 ("statute providing for a daily penalty unrelated to actual losses must be strictly construed"). The statute conditions liability for "liquidated damages" on the seller's failure to provide an annual statement by the statutory deadline. And although the statute also lists the information that must be included in that statement, it does not, strictly speaking, trigger an award of "liquidated damages" when some of that information is missing. By tying the statutory penalty to timely delivery of the annual statement, but not its contents, the Legislature's apparent purpose was to provide the purchaser with certain annual information about the parties' executory contract and to incite further inquiry if some of that information was missing or incomplete. Accordingly, we conclude that an annual statement under Section 5.077 that omits some required information does not invoke the "liquidated damages" provision unless the statement is so deficient as to be something other than a good faith attempt by the seller to inform the purchaser of the current status of their contractual relationship. The answer to the first certified question is, therefore, No.

■■■ The company hired by Millennium to service its financial transactions was apparently unaware of recently enacted disclosure requirements specifically applicable to executory contracts and accordingly sent these purchasers the same statements it typically used to service traditional mortgage loans. Those statements disclosed two of four items of information required by section 5.077(b),[8] the "remaining amount owed on the contract" and the "amounts paid to taxing authorities." Tex. Prop.Code § 5.077(b)(2), (4). It also disclosed part of another item, providing the amount of interest paid during the prior year, but did not state the total "amount paid under the contract," or the "number of payments remaining under the

---

8. The statute actually lists seven items of required information, but the last three, relating to insurance coverage, are not applicable in this case. *See* n. 3, *infra.*

contract." *Id.* § 5.077(b)(1), (3). These omissions, while significant, do not demonstrate such a blatant attempt to circumvent the disclosure requirements as to render the annual statement a nullity.

### III

 The Fifth Circuit next asks whether a purchaser must prove actual harm or injury to recover statutory damages for an incomplete annual statement. We find nothing in the statute to suggest such a requirement. Moreover, to conclude that actual damages are a predicate to recovery under this statute would belie our conclusion that the liquidated damages provision is, in fact, punitive rather than compensatory. Accordingly, our answer to the second question certified is also, No.

Finally, the Fifth Circuit asks whether the "liquidated damages" imposed under this statute are also "exemplary damages" under Chapter 41 of the Texas Civil Practice and Remedies Code, such that a purchaser must also comply with the requirements of Chapter 41 to collect these statutory damages. Chapter 41 generally limits the award of exemplary damages, which it broadly defines as any damages that are "awarded as a penalty or by way of punishment." Tex. Civ. Prac. & Rem.Code § 41.001(5).[9]

Because the incomplete annual statement here did not invoke the liquidated damages provision of Section 5.077(c), we decline to decide at this time whether these statutory damages are also "exemplary damages" within the meaning of Chapter 41.

\* \* \* \* \* \*

 In summary, we conclude that an annual statement that omits some of the information required by Section 5.077(b) does not invoke "liquidated damages" under Section 5.077(c) unless the statement is so deficient as to be something other than a good faith attempt by the seller to inform the purchaser of the current status of their contractual relationship. We further conclude that these statutory damages are penal in nature and do not require actual harm as a predicate to recovery.

Justice WAINWRIGHT filed a concurring opinion.

Justice BRISTER filed a dissenting opinion joined by Chief Justice JEFFERSON and Justice GREEN.

Justice WAINWRIGHT, concurring.

In 1995, the Legislature amended chapter 5 of the Texas Property Code to address serious abuses in the acquisition of homes in the colonias. Senate Comm. on Int'l Relations, Trade & Tech., Bill Analysis, Tex. S.B. 336, 74th Leg., R.S. (1995); House Comm. on Bus. & Indus., Bill Analysis, Tex. S.B. 336, 74th Leg., R.S. (1995); *see also* Act of May 24, 1995, 74th Leg., R.S. Ch. 994, § 1, 1995 Tex. Gen. Laws 4982. The colonias are substandard, generally impoverished, rural subdivisions that typically lack basic utilities and other infrastructure. Senate Comm. on Int'l Relations, Trade & Tech., Bill Analysis, Tex. S.B. 336, 74th Leg., R.S. (1995); House Comm. on Bus. & Indus., Bill Analysis, Tex. S.B. 336, 74th Leg., R.S. (1995). Concentrated along the Texas border with Mexico, colonia residents almost always acquire residential lots through executory contracts called "contracts for deed" or "contracts for sale." Senate Comm. on Int'l Relations, Trade & Tech., Bill Analy-

---

**9.** This provision was amended in 2003 to define "exemplary damages" as "any damages awarded as a penalty or by way of punish-ment *but not for compensatory purposes.*" (Emphasis added).

sis, S.B. 336, 74th Leg., R.S. (1995); House Comm. on Bus. & Indus., Bill Analysis, Tex. S.B. 336, 74th Leg., R.S. (1995). As the Court notes, in this type of contractual conveyance, legal title to the property does not transfer until after all purchase payments have been made, unlike a traditional mortgage in which legal title transfers upon closing the transaction. 185 S.W.3d at 431–32.

The Legislature found that purchasers had little legal protection under the contract-for-deed financing arrangement and no statutory right to critical information about the colonia property being purchased. Act of May 24, 1995, 74th Leg., R.S. Ch. 994, § 1, 1995 Tex. Gen. Laws 4982. Sellers have sold individual lots to two or more purchasers, sold lots without written contracts, and placed liens on lots subsequent to the sale without informing the purchasers and colonia residents. Senate Comm. on Int'l Relations, Trade & Tech., Bill Analysis, Tex. S.B. 336, 74th Leg., R.S. (1995); House Comm. on Bus. & Indus., Bill Analysis, Tex. S.B. 336, 74th Leg., R.S. (1995). Colonia residents also complain that sellers frequently misrepresent the availability of water, sewer service, and other utilities, and that the residents are often not informed when property being sold lies in a flood plain or is otherwise unsuitable for habitation. Senate Comm. on Int'l Relations, Trade & Tech., Bill Analysis, Tex. S.B. 336, 74th Leg., R.S. (1995); House Comm. on Bus. & Indus., Bill Analysis, Tex. S.B. 336, 74th Leg., R.S. (1995).

Although the Legislature considered a prohibition of contract-for-deed conveyances to end these abuses, it determined that many residents building homes in these areas need this method of financing because they do not have access to traditional mortgage financing. Senate Comm. on Int'l Relations, Trade & Tech.,

Bill Analysis, Tex. S.B. 336, 74th Leg., R.S. (1995); House Comm. on Bus. & Indus., Bill Analysis, Tex. S.B. 336, 74th Leg., R.S. (1995); *see also* Act of May 24, 1995, 74th Leg., R.S. Ch. 994, § 1, 1995 Tex. Gen. Laws 4982. The contract-for-deed arrangement, however, allows low-income persons to purchase property and build homes on the property. Act of May 24, 1995, 74th Leg., R.S. Ch. 994, § 1, 1995 Tex. Gen. Laws 4982. To address the fraudulent and abusive conduct, the Legislature amended the statute in 2001, substantially increasing the monetary penalties and applying the protections statewide. House Comm. on Bus. & Indus., Bill Analysis, Tex. S.B. 198, 77th Leg., R.S. (2001); *see also* Act of May 11, 2001, 77th Leg., R.S. Ch. 693, § 1, 2001 Tex. Gen. Laws 1319, 1327 (current version at Tex. Prop.Code §§ 5.062, .077, .079).

The Legislature's purpose is clear, but the statute's language complicates interpretation of the statute's provisions. This difficulty is evident in the certification of the statute's interpretation to our Court by the U.S. Court of Appeals for the Fifth Circuit, and, in answering the question, this Court's split decision. I join the Court's interpretation because it fulfills the Legislature's intent by giving effect to the penalties for a seller's noncompliance with the statute's disclosure requirements while not severely penalizing good faith efforts of sellers to comply.

However, the statute is deafeningly silent on the limits of the penalty. The penalty may be assessed at $250 a day for failure to provide the annual statement, but may the monetary penalties continue to accumulate without boundary? Tex. Prop.Code § 5.077(c)(1). The applicable statute of limitations—not identified in the statute—would set an upper limit on damages, but the amount accrued during a

multi-year limitations period could exceed the property's value by a substantial factor, even in cases in which there is no actual harm. The punishment should fit the crime, but this statute provides no guidance on this question.

Although the statute and the Court's opinion leave open this question, the U.S. Constitution may provide an answer. Punitive damages, a type of civil penalty, have been sanctioned by both this Court and the United States Supreme Court for many years. Punitive damages punish the civil wrongdoer and provide a disincentive to such future conduct. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex.1994); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). Although the states have discretion over the imposition of punitive damages, the U.S. Supreme Court has repeatedly recognized the existence of constitutional limits on these awards. *Campbell*, 538 U.S. at 416, 123 S.Ct. 1513; *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 433–34, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); *Honda Motor Co. v. Oberg*, 512 U.S. 415, 420, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994); *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 453–55, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (plurality opinion); *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 18, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).

These cases stem from the Supreme Court's decision that constitutional limits of the states' police power to fix civil monetary punishments for illegal acts constrain the states' imposition of such fines when the "fines imposed are so grossly excessive as to amount to a deprivation of property without due process of law." *Waters–Pierce Oil Co. v. Texas*, 212 U.S. 86, 107, 111, 29 S.Ct. 220, 53 L.Ed. 417 (1909). In *Waters–Pierce Oil Co.*, the Supreme Court upheld monetary fines imposed by Texas anti-trust laws. 212 U.S. at 112, 29 S.Ct. 220. In subsequent cases, the Supreme Court applied that standard to punitive damages, prohibiting the imposition of these awards in amounts that are "grossly excessive" in relation to the states' interests of retribution and deterrence. *Campbell*, 538 U.S. at 416, 123 S.Ct. 1513; *Gore*, 517 U.S. at 568, 116 S.Ct. 1589. Civil penalties that arbitrarily and without reason deprive citizens of their property impinge individual rights to substantive due process. *See Campbell*, 538 U.S. at 417–18, 123 S.Ct. 1513. Thus, although there are "no rigid benchmarks," punitive damage awards exceeding a single-digit ratio between punitive and compensatory damages raise red flags. *See Campbell*, 538 U.S. at 425, 123 S.Ct. 1513; *see also Gore*, 517 U.S. at 581–83, 116 S.Ct. 1589; *cf. Haslip*, 499 U.S. at 23–24, 111 S.Ct. 1032.

Justices dissenting to these decisions assert that the Due Process Clause erects only procedural due process hurdles to assessing civil punishment of tortfeasors and does not provide any substantive protections against excessive or unreasonable punitive damage awards. *Campbell*, 538 U.S. at 429, 123 S.Ct. 1513 (Scalia, J., dissenting) (criticizing the Supreme Court's substantive due process constitutional limitation as "insusceptible of principled application"); *see also, e.g., id.* at 430, 123 S.Ct. 1513 (Thomas, J., dissenting); *Gore*, 517 U.S. at 598–99, 116 S.Ct. 1589 (Scalia, J., dissenting). Notwithstanding these dissents, the Supreme Court has established that the "Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Campbell*, 538 U.S. at 416, 123 S.Ct. 1513 (majority opinion) (citing *Cooper Indus.*, 532 U.S. at 433, 121 S.Ct. 1678; *Gore*, 517 U.S. at 562, 116 S.Ct. 1589). Reasonableness and pro-

portionality are required in setting the amount of these awards. *Campbell,* 538 U.S. at 426, 123 S.Ct. 1513.

Because the Court decides that Millennium complied with the statute and no penalties are awardable, it is not necessary to address limits on the amount of the civil penalties in this case. However, when the Court faces this issue for decision, we will be bound by constitutional precedents of the U.S. Supreme Court.

Justice BRISTER, joined by Chief Justice JEFFERSON and Justice GREEN, dissenting.

The Court answers three certified questions "No", "No", and "Not applicable". As the express words of several statutes require each question to be answered affirmatively, I respectfully dissent.

In an effort to protect those who buy property by contract-for-deed, the Legislature mandated that various disclosures "shall" be made by sellers.[1] Given the purposes behind the statute, there is no question the Legislature intended these disclosures to be mandatory.[2]

Among these mandatory disclosures is an annual statement.[3] That statement "must include" seven listed items.[4] To ensure compliance, failure to send an annual statement is punishable by "liquidated damages" of $250 per day plus attorney's fees.[5]

In answering the first certified question, the Court "strictly" construes the statute to require fewer items than the statute itself says "must" be included. That is not a very strict construction. Nor does it comply with the legislative mandate that we give the entire statute effect.[6]

In place of the seven statutory items an annual statement "must include," the Court says the statement need only be "a good faith attempt ... to inform the purchaser of the current status of their contractual relationship."[7] What items such an attempt might include is left for future litigation. After today, instead of a right to specific information, buyers have a right only to litigate whether the statement they got is good enough.

It is true that subsection (a) of the statute mandates annual statements, subsection (b) says what they must include, and subsection (c) states the consequences if a seller "fails to comply with Subsection (a)." But the latter does not mean the Legislature intended to penalize only those who sent nothing at all. Subsection (b) makes clear that a statement without the required information is not an "annual statement," and thus necessarily violates subsection (a). The Court's construction leaves no penalty at all for giving less information than the Legislature required, violating the rule that "we must always consider a statute as a whole and attempt to harmonize its various provisions."[8]

In place of the explicit statutory requirements, the Court adopts good-faith and

---

1. *See, e.g.,* Tex. Prop.Code §§ 5.066(b), 5.068, 5.069, 5.070(a), 5.071, 5.072(d), 5.074(c), (d) & 5.077(a).

2. *See* Tex. Gov't Code § 311.016(2) (noting that unless context requires otherwise, "shall" imposes a duty); *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001) (stating that both "must" and "shall" "are generally recognized as mandatory").

3. Tex. Prop.Code § 5.077(a).

4. *Id.* at § 5.077(b).

5. *Id.* at § 5.077(c).

6. Tex. Gov't Code § 311.021(2).

7. 185 S.W.3d at 430.

8. *Marcus Cable Assocs., L.P. v. Krohn,* 90 S.W.3d 697, 706 (Tex.2002).

substantial-compliance standards. These are important and often appropriate standards, but not the ones the Legislature chose to employ here. More important, they are ambiguous at the edges, requiring case-by-case adjudication. That may be good news for those employed in litigation, but not for buyers by contract-for-deed.

The third certified question inquires whether the "liquidated damages" imposed by this statute are "exemplary damages" subject to the substantive and procedural limits of Chapter 41 of the Texas Civil Practices and Remedies Code. That chapter applies broadly to "any action in which a claimant seeks exemplary damages relating to a cause of action," [9] and defines such damages as "any damages awarded as a penalty or by way of punishment." [10]

The purchasers argue that Chapter 41 is inapplicable because the damages sought here are designated in the statute as "liquidated" rather than "exemplary" damages. But the caps and other limits on exemplary damages cannot be avoided by simply calling them something else. Chapter 41 defines such damages by what they do, not what they are called. Similarly, "liquidated damages" in its ordinary meaning (which we must use as the annual-statement statute does not define the term) [11] also turns on substance rather than sobriquet. [12] Thus, whether Chapter 41 applies to the fees imposed here depends not on what they are called, but whether they are "a penalty or by way of punishment."

The nature of fine here does not make that a difficult question. The fine is assessed daily, though nothing in either the statute or logic suggests how a missing annual statement would cause harm at that regular interval. Further, damages of $250 a day would total $7,500 a month and more than $90,000 a year, figures that all parties and amici assure us are well beyond both the sale price of these properties and the financial resources of those who buy them. And as the buyers themselves concede is the case here, the statutory damages accrue even if the buyers have suffered no damages whatsoever. As a matter of law, the damages imposed here are "a penalty or by way of punishment," and Chapter 41 applies by its explicit terms.

9. Tex. Civ. Prac. & Rem.Code § 41.002(a). The word "exemplary" was deleted in 2003, although the substantive provisions of Chapter 41 continue to apply only to "exemplary damages." Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 13.03, sec. 41.002, 2003 Tex. Gen. Laws. 847, 888. This change tends to confirm that the Legislature intends a substantive review of all damages based on their nature rather than name.

10. *Id.* at § 41.001(5). This provision was amended in 2003 to define "exemplary damages" as "any damages awarded as a penalty or by way of punishment *but not for compensatory purposes.*" Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 13.02, sec. 41.001(5), 2003 Tex. Gen. Laws. 847, 887 (emphasis added).

11. Tex. Gov't Code § 312.002; *Cities of Austin, Dallas, Ft. Worth, v. Southwestern Bell Tel. Co.,* 92 S.W.3d 434, 442 (Tex.2002); Ow-ens Corning v. Carter, 997 S.W.2d 560, 577 (Tex.1999). In *Brown v. De La Cruz,* we held that an amendment to a related portion of the Property Code changing a daily fine from a "penalty" to "liquidated damages" changed "not just the recipient but the nature of the amounts assessed." 156 S.W.3d 560, 565 (Tex.2004). But the question in that case was whether a statutory "penalty" implied a private right of action to collect it, a different question from whether a liquidated damages provision is enforceable as a reasonable forecast of damages. *See Phillips v. Phillips,* 820 S.W.2d 785, 788 (Tex.1991).

12. *See Phillips,* 820 S.W.2d at 789 (holding contractual provision denominated as "liquidated damages" was nevertheless a penalty, as it provided for ten times actual damages).

According to the purchasers, the consequences of taking Chapter 41 at its word would be "staggering," and would "destroy[ ] every legislatively enacted damage provision." First of all, while the application of Chapter 41 to such fees is a new question, the characterization of them as penal or compensatory is not. More than a century ago, this Court held that a flat fine of $500 was a penalty, even though designated by statute as "liquidated damages." [13]

Second, the examples the purchasers proffer do not support such exaggerated fears. Two of their examples—attorney's fees and discovery sanctions—are compensatory rather than punitive. Others either do not relate to a cause of action [14] or were the subject of earlier exceptions expressly repealed by the Legislature. [15]

Finally, and most importantly, Chapter 41 expressly provides that its provisions "prevail over all other law to the extent of any conflict." [16] That leaves little room for exceptions. We cannot presume (as the purchasers do) that the drafters of Chapter 41 forgot about statutory fines like the one here; but even if they did, that would not authorize us to edit their draft. [17] "If Parliament does not mean what it says, it must say so." [18]

As to the second certified question, while the annual statement statute does not require proof of actual damages, Chapter 41 generally permits exemplary damages only if actual damages are more than nominal. [19] But for causes of action accruing before September 1, 2003 (the time frame applicable to the claims here), actual damages were not a prerequisite if there was clear and convincing evidence of statutory malice. [20]

Thus, the answer to this question should be "Yes, absent clear-and-convincing evidence of malice."

While the statute here plainly mandates a daily penalty for every minor omission from an annual statement, the provisions of Chapter 41 plainly ameliorate those penalties when there has been little or no harm. By construing the statutes this way, we might have avoided both eviscerating the annual-statement statute and bestowing financial bonanzas on those who fail to receive them. The answer to all three certified questions should be "Yes"; because the Court concludes otherwise, I respectfully dissent.

**13.** *Johnson v. Rolls*, 97 Tex. 453, 79 S.W. 513, 514 (1904).

**14.** Tex. Civ. Prac. & Rem.Code § 41.002(a).

**15.** For example, the purchasers refer to fines that were the subject of a lengthy "laundry list" of exemptions in section 41.002(b), which were repealed in 1995. Act of June 2, 1987, 70th Leg., 1st C.S., ch. 2, § 2.12, 1987 Tex. Gen. Laws 37, 44, *amended by* Act of Apr. 20, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108. *See* Act of May 21, 1997, 75th Leg. R.S., ch. 165, § 4.01, 1997 Tex. Gen. Laws 327.

**16.** Tex. Civ. Prac. & Rem.Code § 41.002(c).

**17.** *Touche Ross & Co. v. Redington*, 442 U.S. 560, 579, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)

(holding that even if construction of statute sanctioned injustice, the Court was not at liberty to legislate); *Brown v. De La Cruz*, 156 S.W.3d at 566 (holding that possibility of legislative mistake did not empower court to create private right of action).

**18.** *Brazos River Auth. v. City of Graham*, 163 Tex. 167, 354 S.W.2d 99, 109 (1961).

**19.** Tex. Civ. Prac. & Rem.Code § 41.004(a).

**20.** *See id.* at §§ 41.004(b), 41.001(7)(A), *amended by* Act of June 11, 2003, 78th Leg., R.S., ch. 204, §§ 13.05, 13.02, 2003 Tex. Gen. Laws 847, 887–88.