

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00860-CV

Henry Gilbert **AYALA** and Chesapeake Exploration, LLC,
Appellants

v.

Natividad A. **SOTO**,
Appellee

From the 81st Judicial District Court, La Salle County, Texas
Trial Court No. 11-03-00037-CVL
Honorable Fred Shannon, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  April 23, 2014

REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART

Chesapeake Exploration, L.L.C. and Henry Gilbert Ayala appeal the trial court's grant of summary judgment in favor of Natividad A. Soto. We reverse the trial court's judgment, render judgment that Soto take nothing against Chesapeake, and remand the cause for further proceedings consistent with this opinion.

**BACKGROUND**

Soto is a seventy-five year-old man who owns 119.400 acres of land in LaSalle County, Texas. In his suit to quiet title against Chesapeake and Ayala, Soto alleged that he was approached by Ayala, a prison guard at the local prison and the mayor pro tem for the city of Cotulla, Texas. Soto and Ayala met through Soto's niece, Barbara Soto-Ruel, who was also a guard at the prison. Soto alleged that Ayala pressured him to sign an oil lease, repeatedly telling him that he would "lose out" if he did not immediately sign a lease. According to Soto, on a hot summer day on June 9, 2010, he met Ayala in a parking lot outside of a bank. In his petition, Soto alleged that Ayala told him that he needed to come quickly to a hotel in Cotulla to meet some "oil people," who were going to leave soon. According to Soto, Ayala then changed his story and said that the oil people had a room at the bank in Cotulla and that Soto should come to the bank immediately. Soto alleged that when he arrived at the bank on June 9, 2010, Ayala met him in the parking lot and told him that the oil company representatives had left and produced a paper for Soto to sign, which Soto believed to be an oil and gas lease. Soto, who can neither read nor write English, alleged that the document was not read or explained to him. A notary then came to the parking lot from the bank and notarized the document, which was not an oil and gas lease but instead was a durable power of attorney.

While the above are Soto's allegations, the following facts are undisputed. On June 9, 2010, Soto signed a durable power of attorney, which granted Ayala authority to act as Soto's attorney-in-fact

in any and all matters necessary or desirable to participate actively as a mineral and/or royalty owner, including but not limited to the following:

1) to execute and deliver Oil, Gas and other Mineral Leases, containing unitization and pooling agreements and other provisions as my Attorney-in-Fact shall deem advisable;
2) to execute Mineral and Royalty Stipulations and Conveyances;

3) to execute Seismic or Exploration Permits;
4) to execute Options covering Oil, Gas and other Mineral interests; [and]
5) to execute Division Orders.

Also on June 9, 2010, Ayala filed the power of attorney with the LaSalle County Clerk's office, and it was recorded on page 746 of volume 504. The next day, June 10, 2010, Ayala signed as Soto's agent two documents: Paid Up Oil, Gas and Mineral Lease with Chesapeake, and a Memorandum of Oil, Gas and Mineral Lease acknowledging Chesapeake's interest in Soto's property. That same day, Ayala approached Soto and asked him to sign a W-9 Form (Request for Tax-payer Identification Number and Certification). Soto refused and Ayala signed the form himself. On June 11, 2010, after consulting an attorney, Soto filed three revocations with the LaSalle County Clerk's Office. One revocation specifically revoked any power of attorney appointing Ayala as attorney in fact. Another revocation revoked any powers of attorney appointing Soto's niece as attorney in fact.[1] The final revocation revoked any prior powers of attorney executed before June 11, 2010. All three revocations were recorded in the official records of the LaSalle County Clerk's Office on June 11, 2010. That same day, Soto informed his niece of the revocations and asked her to tell Ayala about them. Ayala acknowledged in his deposition testimony that he knew about the revocation about a week after it was filed and before Chesapeake issued payment of any consideration pursuant to the lease. On June 17, 2010, the Memorandum of Oil, Gas and Mineral Lease was filed with the LaSalle County Clerk's Office. It was recorded on June 22, 2010, and appears on page 263 of volume 505. On June 23, 2010, Chesapeake issued a check in the amount of $238,800.00 to Ayala as Attorney-in-Fact for Soto. Before issuing the check, Chesapeake did not check the official deed records of LaSalle County, Texas. On June 24, 2010, Ayla received the check and approached Soto to sign the check, but Soto refused, telling

---

[1] Soto testified in his deposition that [], he had signed a power of attorney appointing his niece [when he had surgery].

him he had withdrawn the authority for him to do anything and to send the check back. Ayala endorsed the check and deposited it into his personal account. After the check cleared, Ayala withdrew funds in June, July, and August 2010 totaling $34,400.

In his deposition, Ayala disputed Soto's right to the $238,800.00 paid by Chesapeake. Ayala claimed that he and Soto orally agreed all bonus money paid under any lease would be Soto's fee. According to Ayala, Soto "just wanted an oil and gas lease to give him at least twenty percent because somebody else was trying to give him eighteen, and everything else – any other monies would be for my compensation, bonuses or whatever other monies I would get." "Basically, all he wanted was just the oil and gas lease." Soto disputed that any agreement was made between him and Ayala to compensate Ayala for obtaining the oil, gas, and mineral lease.

Soto filed a suit to quiet title against Chesapeake and Ayala, seeking cancellation of the lease. He also brought claims for negligent misrepresentation, statutory fraud, fraud by non-disclosure, fraud in the inducement, and fraud in real estate transactions. Chesapeake filed a traditional and no-evidence motion for summary judgment, arguing that Chesapeake was a bona fide purchaser who acquired legal title to the property in good faith and that there was no evidence to support Soto's fraud and negligent misrepresentation claims against Chesapeake. Two days later, Soto also filed a motion for summary judgment on his suit to quiet title, arguing that the consideration paid by Chesapeake was ineffective to bind the lease because at the time consideration was paid, Ayala had no actual or apparent authority to accept the consideration on behalf of Soto. According to Soto, at the time Chesapeake paid the consideration to Ayala, it was deemed to have actual knowledge of the revocation of Ayala's power of attorney as it had been filed and recorded in the official records of the LaSalle County Clerk, resulting in the failure of consideration to bind Soto to the lease. The trial court agreed with Soto and granted Soto's motion for summary judgment. It declared the lease and memorandum of the lease to be null and void,

and ordered them set aside. With respect to Soto's other claims against Chesapeake, the trial court noted Soto had represented that he no longer intended to pursue those claims against Chesapeake. Thus, the trial court partially granted Chesapeake's no-evidence motion for summary judgment and struck the fraud and negligence representation claims against Chesapeake from Soto's pleadings. The trial court denied the remainder of Chesapeake's motion for summary judgment. The trial court then signed an order of severance, making the trial court's order granting partial summary judgment a final, appealable order. Chesapeake and Ayala appeal from the trial court's grant of Soto's motion for summary judgment.

## STANDARD OF REVIEW

When opposing parties move for partial summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if we determine that the trial court erred, render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

To obtain a traditional summary judgment, a party moving for summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In reviewing the grant of a summary judgment, we must indulge every reasonable inference and resolve any doubts in favor of the respondent. *Johnson*, 891 S.W.2d at 644; *Nixon*, 690 S.W.2d at 549. In addition, we must assume all evidence favorable to the respondent is true. *Johnson*, 891 S.W.2d at 644; *Nixon*, 690 S.W.2d at 548-49. A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of the plaintiff's cause of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). Once the movant has established a right to

summary judgment, the burden shifts to the respondent to present evidence that would raise a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

Under Rule 166a(i), a party may move for a no-evidence summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The trial court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. *Id.* The respondent is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a(i) cmt-1997. In reviewing a trial court's order granting a no-evidence summary judgment, we consider the evidence in the light most favorable to the respondent and disregard all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

## DISCUSSION

Chesapeake argues that the trial court erred in granting summary judgment on Soto's suit to quiet title because Chesapeake was a bona fide purchaser and did not have a duty to check the deed records before payment of consideration. A bona fide purchaser is one who has acquired apparent legal title to property in good faith for a valuable consideration and without actual or constructive notice of any outstanding equity, adverse interest, or title. *Nguyen v. Chapa*, 305 S.W.3d 316, 323 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *see also* TEX. PROP. CODE ANN. § 13.001(a) (West 2004). It is undisputed that at the time Ayala signed the lease and the memorandum of the lease, he had a durable power of attorney signed by Soto. It is also undisputed that Ayala's power of attorney was not revoked by Soto until after Ayala signed the lease and memorandum of lease. And, it is undisputed that before Chesapeake made the payment of

consideration to Ayala as attorney-in-fact for Soto, it was not notified that Soto had revoked the power of attorney appointing Ayala.

In response to Chesapeake's bona fide purchaser argument, Soto contends that because the lease was executory in nature, it was not valid until payment of consideration was made. And, Soto emphasizes that payment of consideration was not made by Chesapeake until after Soto filed the revocations in the deed records. According to Soto, the filing of the revocations in the deed records was "notice to all" under the doctrine of registry notice, and Chesapeake was charged with actual notice of revocation of the power of attorney. Soto argues that the lease could be revoked at any time prior to payment of consideration, and Chesapeake's failure to tender consideration before Soto revoked the power of attorney gave Soto the right to rescind the contract unilaterally without Chesapeake's consent. And, Soto argues that his act of filing the revocation acted as a constructive rescission of the lease.

Chesapeake argues that the lease was not executory in nature, but was a present conveyance of an interest in the land described therein and was thus valid once signed on June 10, 2010. We agree with Chesapeake. "Executory contracts [are] also known as contracts for deed." *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005). "A contract for deed, unlike a mortgage, allows the seller to retain title to the property until the purchaser has paid for the property in full." *Id.* "A contract for deed differs from a conventional contract for sale of realty, in which the seller and purchaser mutually agree to complete payment and title transfer on a date certain (the 'closing date')." *Shook v. Walden*, 368 S.W.3d 604, 625 (Tex. App.—Austin 2012, pet. denied). In contracts for deed, "legal title to the property does not transfer until after all purchase payments have been made." *Flores*, 185 S.W.3d at 435 (Wainwright, J., concurring). Unlike contracts for deeds, an oil and gas lease upon its execution and delivery operates "as a present conveyance of the oil and gas under the premises described in the lease, and vested in [the oil

company] a determinable fee in the oil and gas in place." *Jones v. Bevier*, 59 S.W.2d 945, 948 (Tex. Civ. App.—Beaumont 1933, writ ref'd); *see also Parker v. Standard Oil Co.*, 250 S.W.2d 671, 681 (Tex. Civ. App.—Galveston 1952, writ ref'd n.r.e.) ("A mineral lease is the conveyance of a determinable fee interest in land" and "[t]he intention of the parties to a mineral lease is that minerals shall be produced from the land lease, and shared as therein specified.").

Further, we disagree with Soto that the lease lacked consideration and was thus invalid. Consideration is a fundamental element of every valid contract. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 (Tex. 1997); *Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App.—Tyler 2010, no pet.). What constitutes consideration is a question of law, *Brownwood Ross Co. v. Maverick Cnty.*, 936 S.W.2d 42, 45 (Tex. App.—San Antonio 1996, writ denied), and the existence of a written contract presumes consideration for its execution. *Doncaster v. Hernaiz*, 161 S.W.3d 594, 603 (Tex. App.—San Antonio 2005, no pet.). Consideration is a present exchange bargained for in return for a promise and consists of benefits and detriments to the contracting parties. *Raork v. Stallworth Oil & Gas Inc.*, 813 S.W.2d 492, 496 (Tex. 1991); *Burges*, 304 S.W.3d at 628. For consideration to exist there must be either a benefit to the promisor or a detriment to the promisee. *Rice v. Metropolitan Life Ins. Co.*, 324 S.W.3d 660, 670-71 (Tex. App.—Fort Worth 2010, no pet.). A promisor "benefits" when the promisor acquires a legal right to which the promisor would not otherwise be entitled in exchange for a promise. *N. Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1998). A promisee suffers a legal "detriment" when, in return for a promise, the promisee surrenders a legal right that the promisee otherwise would not have been entitled to exercise. *Id.* Lack of consideration occurs when the contract, at its inception, does not impose obligations on both parties. *Burges*, 304 S.W.3d at 628. In contrast, failure of consideration occurs when, because of some supervening cause *after a contract is formed*, the promised performance fails. *Id.* Failure of consideration is an affirmative defense. *See* TEX. R. CIV. P. 94. In this case, the

lease between Ayala acting on behalf of Soto and Chesapeake provided for consideration. If Chesapeake had not fulfilled its obligation to pay the money owed, there would have been a failure of consideration, but the lease is not void due to a lack of consideration.

Soto further argues that a failure of consideration gives the other contracting party a right to rescind unilaterally and without agreement of the breaching party, and that a contract for the sale of realty can be revoked at any time prior to payment of consideration. Soto claims he terminated the lease prior to the payment of consideration by revoking Ayala's authority to act on his behalf under the power of attorney. We disagree with Soto. In revoking the power of attorney and filing the revocation in the deed records, Soto did not rescind the lease between him and Chesapeake. The lease was effective when it was signed by Ayala, as Soto's agent, and Chesapeake. To rescind the lease, Soto had to do more than merely sign a revocation of the power of attorney.

As the lease was effective when it was signed by Ayala and Chesapeake, we agree with Chesapeake that it was a bona fide purchaser. It is undisputed that at the time Ayala signed the lease, there was a power of attorney signed by Soto granting Ayala the authority to sign the lease. It is undisputed that Chesapeake never received actual notice that the power of attorney had been revoked by Soto. *See* TEX. EST. CODE ANN. § 751.058 (West Supp. 2013) ("Unless otherwise provided by the durable power of attorney, a revocation of a durable power of attorney is not effective as to a third party relying on the power of the attorney until the third party receives actual notice of the revocation."). And, although Soto relies on section 13.002 of the Property Code in support of its argument that Chesapeake was deemed to have notice of the revocation,[2] it is also undisputed that (1) Soto did not revoke the power of attorney until *after* Ayala signed the lease;

---

[2] *See* TEX. PROP. CODE ANN. § 13.002 (West 2004) ("An instrument that is properly recorded in the proper county is (1) notice to all persons of the existence of the instrument; and (2) subject to inspection by the public.").

and (2) such revocation was not filed in the deed records until days *after* Ayala signed the lease. Even if Chesapeake had checked the deed records prior to signing the lease with Ayala, it would not have discovered any revocation of the power of attorney. Thus, we hold that Chesapeake is a bona fide purchaser, and the lease between Chesapeake and Soto is valid.

Because the lease is valid, the trial court erred (1) in granting Soto's motion for partial summary judgment, which requested the trial court to declare the lease null and void; and (2) in denying Chesapeake's cross-motion for summary judgment. We note that Ayala has also appealed the trial court's granting of partial summary judgment in favor of Soto. Unlike Chesapeake, Ayala did not bring a cross-motion for summary judgment. In his brief, Ayala makes similar arguments to Chesapeake as to why Soto's motion for partial summary judgment should not have been granted. Having determined the trial court erred in granting Soto's motion for partial summary judgment, we need not address Ayala's specific arguments.

We therefore reverse the trial court's judgment, render judgment that Soto take nothing against Chesapeake, and remand the cause for further proceedings consistent with this opinion.


Karen Angelini, Justice