In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00086-CV
_____

SADLER CLINIC ASSOCIATION, P.A., Appellant

V.

NORA C. HART, TAWFIQ GORDY ALAM,
SANJAYKUMAR PATEL, TEMITOPE SOARES AND BENNY WANG,
Appellees

On Appeal from the 9th District Court
Montgomery County, Texas
Trial Cause No. 12-02-01579-CV

**OPINION**

In a suit against Dr. Nora C. Hart, the Sadler Clinic Association, P.A. sought to enforce a noncompetition covenant in an employment contract. *See* Tex. Bus. & Com. Code Ann. §§ 15.50-.52 (West 2011). Drs. Tawfiq G. Alam, Sanjaykumar Patel, Temitope Soares, and Benny Wang intervened in the suit with a declaratory judgment action to have the noncompetition covenant declared unenforceable. Sadler and the physicians filed motions for summary judgment. The trial court

1

determined the contract does not include a reasonable buyout clause and is therefore unenforceable. The court also awarded the physicians attorney fees. Sadler Clinic appealed.

We conclude the trial court erred in its construction of the contract and in the court's application of the Covenants Not To Compete Act. The contract includes a buyout clause. If a party contends the buyout price is unreasonable, the party's remedy is to have a reasonable price determined by binding arbitration. We also hold that in this proceeding the physicians' entitlement to attorney fees is governed by the Covenants Not To Compete Act. Fees not recoverable under that Act in this proceeding are not recoverable under the Declaratory Judgments Act. The judgment of the trial court is reversed and the cause is remanded for further proceedings.

SUMMARY JUDGMENT REVIEW

In reviewing a summary judgment, a court determines whether the movant established that no genuine issue of material fact exists and that the movant was entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When the trial court grants one party's motion and denies the opponent's, the appellate court considers the summary judgment evidence and determines the questions

2

presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988).

THE EMPLOYMENT CONTRACT

The individual employment contracts are substantively identical. Each agreement contains a restrictive covenant prohibiting a departing physician from competing with Sadler Clinic for eighteen months within a twenty-two mile radius of the main Sadler facility.

Texas law requires that a covenant not to compete be ancillary to an otherwise enforceable agreement. Tex. Bus. & Com. Code Ann. § 15.50(a); *see Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 775 (Tex. 2011). The physicians argue the employment agreements are illusory and cannot support the enforcement of the noncompetition covenant, because the employment agreements bind physicians to certain obligations, but set forth no corresponding obligation for Sadler. Sadler asserts it was required to provide the physicians with confidential information: minutes from all board of directors' meetings, including those involving strategic and operational information; income distributions for all Sadler physicians; contract information regarding drugs and supplies, including vendors and various cost-pricing methods; reimbursement rates and credentialing information with Sadler's insurance carriers; medical coding and billing, and financial information;

3

and Sadler's patient accounting systems. The contracts here include a provision that the physicians will not disclose confidential information the physicians are "placed in a position by Clinic to become acquainted with[.]" *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651-56 (Tex. 2006) (covenant ancillary to agreement to preserve confidences). Sadler argues that at confidential meetings the physicians could attend, the Sadler board discussed the location and features of new facilities, the addition of new practice specialties, policies and procedures about quality care, financial data, and negotiated rates for insurance carriers. Dr. Robert Branstetter, chief executive officer of Sadler Clinic, stated by affidavit that the doctors received and had access to confidential information "from day one of their work at Sadler Clinic." Branstetter expressed concern that "[t]he confidential information provided to the physicians . . . may be used to compete for patients in Sadler Clinic's primary patient draw area, and to lure physicians away to compete with Sadler in that area."

The physicians maintain that Sadler did not own this information and that it instead belonged to Sadler's management company. But, as Branstetter stated in a supplemental affidavit, "all management services provided by MCMC were under contract with and at the request of Sadler Clinic." He stated that "Montgomery County Management Company must maintain the confidentiality of Sadler Clinic's

4

documents and information" and that "[e]ach of the doctors in this lawsuit is a member of [MCMC], as well as a shareholder in Sadler Clinic."

The physicians argue that Sadler does not have a protectable interest in patient records because Sadler is required to provide departing physicians with a list of all patients seen within two years of the departure. *See* 22 Tex. Admin Code. § 165.5 (2011) (two years); *see also* Tex. Bus. & Com. Code Ann. § 15.50(b)(1)(A) (one year). The contract provides that the restrictive covenant shall not be construed to deny the physicians the required patient information. But the contract also provides that such confidential information as "operation methods and information, accounting and financial information, marketing and pricing information and materials, [and] internal publications and memoranda" are protectable. The physicians agreed to protect the confidential information. The employment agreements contain promises that are not illusory, and the covenants not to compete are ancillary to an otherwise enforceable agreement. *See Marsh USA Inc.*, 354 S.W.3d 764, 774-80; *Mann Frankfort,* 289 S.W.3d at 849-52.

### THE BUYOUT PROVISION

The employment agreements contain an "Option to Pay Liquidated Damages" provision that allows the physicians to buyout of the noncompetition covenant if they do not desire to be bound by it. The order granting the physicians'

5

motion for summary judgment states the ground on which the trial court granted summary judgment: "[P]aragraph 13 of Physician's Employment Agreement fails to contain a reasonable buyout clause and is therefore unenforceable as a matter of law."

Sadler argues that the trial court is not authorized to second-guess what the parties have determined is a reasonable amount. Sadler also argues that the physicians did not show that the buyout amount was greater than necessary to protect the goodwill or other business interests of Sadler or, if the provision is for liquidated damages, that the provision amounts to an unenforceable penalty.[1]

Section 15.50 of the Business and Commerce Code provides that a covenant not to compete relating to the practice of medicine must "provide for a buy out of the covenant by the physician at a reasonable price or, at the option of either party, as determined by a mutually agreed upon arbitrator or, in the case of an inability to agree, an arbitrator of the court whose decision shall be binding on the parties[.]" Tex. Bus. & Com. Code Ann. § 15.50(b)(2). The physicians argue the buyout clause is ambiguous and so "could not be enforced." The "enforceability of a covenant not to compete is a question of law." *Mann Frankfort*, 289 S.W.3d at 848.

---

[1] *But see* Tex. Bus. & Com. Code Ann. § 15.51(b).

6

If the written instrument can be given a definite legal meaning, it is not ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A court attempts to give effect to the parties' intent as expressed in the contract. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). The entire contract is examined in an effort to harmonize and give effect to all the provisions so that none will be rendered meaningless. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). An agreement subject to more than one reasonable interpretation is ambiguous. *See Pilarcik v. Emmons,* 966 S.W.2d 474, 478 (Tex. 1998). To determine whether an agreement is ambiguous, a court looks at the contract as a whole and considers the circumstances at the time of the agreement. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). The parties' offer of conflicting interpretations does not necessarily establish ambiguity. *See Praeger v. Wilson*, 721 S.W.2d 597, 600 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.). And an agreement is not ambiguous simply because the contract must be read carefully to be properly understood. *See Gomez v. Hartford Co. of the Midwest,* 803 S.W.2d 438, 442 (Tex. App.—El Paso 1991, writ denied).

The physicians assert that, using the language of the contract, there are multiple interpretations of how to calculate a buyout. One alleged ambiguity

7

relates to the meaning of the word "income" and the phrase "during the preceding 12 months. . . ." Under the contract at issue, if the physician desires to practice medicine in violation of the covenant-not-to-compete provisions, the physician has the option of paying Sadler a certain percentage of the "[i]ncome paid by Clinic to Physician during the preceding 12 months as shown on the W-2 forms of Clinic[.]" The amount varies with the length of employment and with the status of the physician as a shareholder or employee. The contract explains the "damages are in partial restitution for the loss or damage which Clinic will suffer as a result of such breach and in partial recovery of its investment in the practice of Physician."

The physicians argue the phrase "preceding 12 months" could mean the 12 months immediately prior to the end of the working relationship, which may be different from the 12 months reflected on the last year's W-2 form. The contract provides that the physician must pay to clinic as liquidated damages an amount based on the length of employment. For those physicians who are clinic shareholders, each "condition" or section includes the phrase "the Income paid by Clinic to Physician during the preceding 12 months as shown on the W-2 forms of Clinic." It is apparent that the preceding 12 months is a reference to the 12 months reflected on the last W-2 form of the Clinic.

The physicians also argue the contract does not specify whether the income

8

is gross income or "reported W-2 wages." The contract defines "income," however, as "income for federal income tax purposes," and the contract specifies the income paid by clinic to Physicians as shown on the W-2 forms of Clinic. It is apparent the contract refers to the gross pay reported on the W-2 form. "[F]or federal income tax purposes," the amount of gross pay is the starting point. If the parties had intended to use a different number that allowed for a reduction for deductions, exclusions or taxes withheld, the parties would have included that calculation in the contract. We are not persuaded by the physicians' argument that they "established that the Buyout Clause was ambiguous and could not be enforced."

## A REASONABLE PRICE

The statute requires that the covenant provide for a buyout by the physician at a reasonable price, and that is the issue addressed by the trial court. *See* Tex. Bus. & Com. Code Ann. § 15.50(b)(2). The physicians argue the buyout clause is unenforceable because it sets forth an arbitrary and unreasonable value that has no relationship to the damages Sadler would incur if a physician violated the noncompetition covenant.

Reasonable price is not defined in the statute, but the ordinary meaning of price is not the same as that for damages. Price is the "amount of money or other

9

consideration asked for or given in exchange for something else; the cost at which something is bought or sold." *Black's Law Dictionary* 1308 (9th ed. 2009). The term damages refers to "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury[.]" *Black's Law Dictionary* 445 (9th ed. 2009). The term liquidated damages generally refers to an acceptable measure of damages stipulated in advance in the event of a breach of contract. *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005); *Valence Operating Co.*, 164 S.W.3d at 664 ("Liquidated damages clauses fix in advance the compensation to a party accruing from the failure to perform specified contractual obligations. . . .").

A valid liquidated damages amount may represent a reasonable buyout price in a particular case, but though the concepts may be closely related in this context, they are not necessarily identical. And though it is not clear how a physician's annual gross income would relate directly to Sadler's lost profits, the Legislature's choice of words -- "price," rather than "damages" or "lost profits" -- may make a difference in determining a reasonable buyout amount under the circumstances.

As originally introduced, the legislative bill provided that a reasonable price was to be "determined by a mutually agreed upon arbitrator." House Comm. on Pub. Health, Bill Analysis, Tex. H.B. 3285, 76th Leg. R.S. (1999). The final version of the bill removed the requirement of arbitration if the parties agreed on a

10

reasonable price, and added the provision that if the parties could not agree on the arbitrator, the court would appoint one.[2]

Parties agree to an amount or formula at the time they sign the contract. Although intervening circumstances may make the amount seem unreasonable at the time the buyout provision is sought to be implemented, the statute does not give the trial court authority to reform the price. *See* Tex. Bus. & Com. Code Ann. §§ 15.50, 15.51. The statute does give the trial court the authority to "reform the covenant to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the promisee . . . ." Tex. Bus. & Com. Code Ann. § 15.51(c). The relief that may be granted to the employer after reformation is limited to injunctive relief. *Id.* But the absence of damages as a remedy for the employer after reformation does not mean a physician is precluded from exercising a valid buyout option to avoid entry of an injunction prohibiting competition. *See id.* §§ 15.50(b)(2), 15.51(c). Section 15.50(b)(2) provides arbitration as relief from an unreasonable stipulated price. The Legislature anticipated that the price may be in dispute, for whatever reason, at the time of the buyout, whether the limitations

---

[2]*See* Act of May 26, 1999, 76th Leg. R.S., ch. 1574, § 1, 1999 Tex. Gen. Laws 5408, 5409.

are reformed or not, and in that event provided for binding arbitration to determine the price to be paid.

The agreement here includes a buyout provision. The covenant does not include an express reference to the arbitration option, but that is not fatal to the agreement and does not preclude arbitration of the issue of reasonable price. *See* Tex. Bus. & Com. Code Ann. § 15.50(b)(2). We presume that the parties contracted with knowledge of the statute's arbitration provision concerning the price, and that the parties intended the statute's application in determining a reasonable price. *See generally Danciger Oil & Ref. Co. of Tex. v. Powell*, 154 S.W.2d 632, 635 (Tex. 1941) (An implied covenant "must arise from the presumed intention of the parties as gathered from the instrument as a whole.").[3]

Under the statute, if the physician elects to compete despite signing a valid noncompetition covenant with a buyout provision, the physician must pay the agreed amount or elect to have a reasonable price determined by an arbitrator. *See* Tex. Bus. & Com. Code Ann. § 15.50(b)(2). The statute does not give the trial

---

[3] The physicians cite an unpublished opinion by this Court where we concluded that section 15.50(b)(2) did not "interject" an agreement to arbitrate. *See Gulf Coast Cardiology Group, P.A. v. Samman*, No. 09-02-009CV, 2002 WL 1877175, at *1 (Tex. App.—Beaumont Aug. 15, 2002, pet. denied) (not designated for publication). The employment agreement in that case had no buyout provision, however. *See also* Tex. R. App. P. 47.7(b) (Unpublished opinion prior to January 1, 2003, has "no precedential value[.]").

court the role of determining a reasonable price. *See id*. § 15.51(c). An arbitrator is given that role. *See id*. § 15.50(b)(2). We hold the trial court erred in declaring the entire covenant not to compete unenforceable because the court believed the stipulated buyout price was unreasonable. The proper remedy was binding arbitration to determine a reasonable price.[4] Issue one is sustained.

THE LIMITATIONS IN THE COVENANT

Sadler asks that this Court render judgment enforcing the covenant not to compete. Sadler argues that the covenants "as a matter of law contain reasonable limitations." The summary judgment record includes some evidence, however, that a geographic limitation of ten miles or possibly less may adequately protect Sadler. The covenant provides a twenty-two mile geographic limitation. The trial court originally denied Sadler's request for a temporary injunction because "the geographical area of the noncompete provision is not reasonable as to Dr. Hart, a family practice doctor." The trial court did not reform the contract, although the statute requires reformation "to the extent necessary" to cause the limitations "to be reasonable[.]" *Id.* § 15.51(c). Any reformation occurs before the issue of reasonable price is determined. The cause must be remanded for the trial court's

---

[4] The statute provides that either party may choose arbitration to determine a reasonable price. *See* Tex. Bus. & Com. Code Ann. § 15.50(b)(2).

13

initial determination of the reasonableness of the limitations, and for reformation if necessary. *See* Tex. Bus. & Com. Code Ann. § 15.51(c).

But apparently the restricted period -- during which the physicians were precluded from competing -- may have expired during the litigation. The contract contains a tolling provision during a breach, but under the contract the tolling period is "not to exceed" an additional eighteen months. The tolling period may have expired as to some, if not all, of the physicians. Sadler asks that we equitably toll the time period further, and presents two reasons.

First, Sadler argues that at least one physician has "practiced without interruption in violation of the noncompete[,]" and that the time period of a covenant not to compete can be equitably extended if the violations were "continuous and persistent." *Compare Farmer v. Holley*, 237 S.W.3d 758, 761 (Tex. App.—Waco 2007, pet. denied) (Record did not support assertion that violations were continuous and persistent.). But in this case the contract contains its own tolling provision extending the restricted period during a breach. We decline to grant an equitable extension because of a breach when the parties expressly agreed in the contract as to the time of tolling during a breach.

Second, Sadler argues we should rule that the time period of the noncompetition covenant has been equitably tolled during the pendency of the

14

litigation. *Compare RenewData Corp. v. Strickler*, No. 03-05-00273-CV, 2006 WL 504998, at *5, (Tex. App.—Austin Mar. 3, 2006, no pet.) (mem. op.) (Delays in the enforcement were not simply "inherent to litigation[.]"). While this reason relates to a breach, it focuses more directly on court inaction over which a party has no control. Following federal court precedent, an appellate court could leave initial consideration of the applicability of this reason for an equitable extension to the trial court on remand. *See Guy Carpenter & Co. v. Provenzale,* 334 F.3d 459, 464 (5th Cir. 2003) (power of federal district court "under Texas law" to craft injunction in light of court's delay in deciding motion to reconsider). The Texas Supreme Court has indicated that the issue of reformation becomes moot after the term of the noncompetition covenant has expired. *See Weatherford Oil Tool Co. v. Campbell*, 340 S.W.2d 950, 952 (Tex. 1960). One court has concluded that *Weatherford* means that a Texas "court will not extend the period provided in a restrictive covenant contained in an employment contract." *Rimes v. Club Corp. of Am.*, 542 S.W.2d 909, 912 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.). While we do not believe *Weatherford* addressed the reason articulated by the federal court in *Provenzale*, we nevertheless decline to grant an equitable extension under the circumstances here. The parties to this contract apparently anticipated delay due to litigation resulting from a possible breach, and provided for a maximum

tolling period in the contract.

If the trial court reforms the limitations, however, damages are not available. *See* Tex. Bus. & Com. Code Ann. § 15.51(c). Injunctive relief would remain available, assuming the restricted period for the specific physician has not expired. *See id*. But if a limitation must be reformed, yet injunctive relief is not available because of the expiration of the time provided in the covenant, reformation may be a futile exercise. *See John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (Expiration of covenant so "any reformation of that provision by the trial court would have been an exercise in futility."). However, if on remand the limitations are determined to be reasonable for a specific physician and need not be reformed, and the physician nevertheless has chosen to compete in violation of a valid noncompetition covenant, the physician must pay a reasonable buyout price to be determined by an arbitrator, assuming the parties do not agree the stipulated buyout price is reasonable. If an injunction is still available to enforce a reformed agreement as to a particular physician, the issue of a reasonable buyout price would then also be arbitrable on remand.

Issue two is therefore sustained in part and overruled in part. The cause will be remanded to the trial court for the determination of the matters set out in our

16

discussion of issue two. However, to the extent Sadler asks this Court to grant an extension and to also enforce the covenant before the trial court considers the reasonableness of the limitations, issue two is overruled.

ATTORNEY FEES

In issue three, Sadler argues that the physicians did not establish their entitlement to attorney fees under section 15.51 of the Act. Sadler argues the Covenants Not To Compete Act preempts recovery of attorney fees under the Declaratory Judgments Act. The physicians in a footnote in their brief state they "did not pursue an award of attorneys' fees under the provision in Section 15.51 of the Covenants Not to Compete Act." Instead, the physicians argue they are entitled to recover attorney fees under the Declaratory Judgments Act.[5] *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008).

The procedures and remedies in an action to enforce a covenant not to compete provided by section 15.51 "are exclusive and preempt" proceedings and remedies "under common law or otherwise." Tex. Bus. & Com. Code Ann. § 15.52; *see Perez v. Tex. Disposal Sys., Inc.*, 103 S.W.3d 591, 592-94 (Tex. App.—

---

[5]In issue four, Sadler argues that if fees are recoverable under the Declaratory Judgments Act, the physicians were required to segregate "recoverable fees from the nonrecoverable fees." *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006). We do not reach issue four because of our resolution of issue three.

17

San Antonio 2003, pet. denied) (attorney fee provision exclusive). In its suit against Hart, Sadler sought to enforce the covenant. The physicians intervened in that suit with a declaratory judgment action. Sadler sought to enforce the covenant, and the physicians sought to avoid the covenant through their motion for summary judgment. The terms of the Covenants Not To Compete Act govern the dispute over the enforcement of the covenant. The physicians did not pursue an award of attorney fees under section 15.51 in their motion for summary judgment, and do not argue that there is no genuine issue of material fact concerning liability for attorney fees under section 15.51(c). In this proceeding, the exclusivity and preemption provision of the Covenants Not To Compete Act precludes an award of attorney fees under the Declaratory Judgments Act. *See* Tex. Bus. & Com. Code Ann. § 15.52; *see also generally MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009) ("[T]he rule is that a party cannot use the [Declaratory Judgments] Act as a vehicle to obtain otherwise impermissible attorney's fees."). Issue three is therefore sustained. We reverse the trial court's judgment, and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED.


                                      _____

                                        DAVID GAULTNEY
                                            Justice

Submitted on January 10, 2013
Opinion Delivered June 13, 2013

Before McKeithen, C.J., Gaultney and Horton, JJ.

19