Opinion issued August 27, 2015



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00458-CV

———————————

**JAGDISH TUMMALA, M.D., EVEREST INPATIENT PHYSICIANS, PLLC, SHAH & DICHOSO, PLLC, PRAGNESH R. SHAH, M.D., P.A., AND DARYL D. DICHOSO, M.D., P.A., Appellants/Cross-Appellees**

**V.**

**TOTAL INPATIENT SERVICES, P.A., Appellee/Cross-Appellant**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-72321**

---

## CONCURRING OPINION

The majority concludes that the non-compete covenant was never triggered—and thus never breached—because Jagdish Tummala left his job at TIPS during the Introductory Period. I disagree with this conclusion, but I

nevertheless concur in the Court's judgment because the trial court erred in awarding $100,000 in damages in the absence of any evidence of damages and based solely on the Agreement's non-mandatory buyout provision.

The Business and Commerce Code provides that a covenant not to compete relating to the practice of medicine must include a buyout provision to be enforceable against a Texas physician. It states:

> (b) A covenant not to compete relating to the practice of medicine is enforceable against a person licensed as a physician by the Texas Medical Board if such covenant complies with the following requirements:
>
> …
>
> > (2) the covenant must provide for a buy out of the covenant by the physician at a reasonable price or, at the option of either party, as determined by a mutually agreed upon arbitrator or, in the case of an inability to agree, an arbitrator of the court whose decision shall be binding on the parties.

TEX. BUS. & COM. CODE ANN. § 15.50(b) (West 2011); *see also Greenville Surgery Ctr., Ltd. v. Beebe*, 320 S.W.3d 850, 853 (Tex. App.—Dallas 2010, no pet.) (physician's covenant not to compete unenforceable because it contained no buyout clause as required by Section 15.50(b)(2)).

The Business and Commerce Code also prescribes the remedies available in actions to enforce covenants not to compete. Section 15.51(a) states, in relevant part: "a court may award the promisee under a covenant not to compete damages, injunctive relief, or both damages and injunctive relief for a breach by the promisor

2

of the covenant." TEX. BUS. & COM. CODE ANN. § 15.51(a) (West 2011). Thus, the statutory remedies available for breach of an enforceable covenant not to compete are limited to damages, injunctive relief, or both. Notably, Section 15.51(a) does not authorize courts to award the buyout amount per se, but that is what the trial court did here.

There may be cases in which the parties expressly contract for payment of the buyout amount as liquidated damages in the case of a breach. *See Sadler Clinic Ass'n, P.A. v. Hart*, 403 S.W.3d 891, 895–97 (Tex. App.—Beaumont 2013, pet. denied) (buyout provided that "the physician *must* pay to clinic *as liquidated damages*" an amount to be calculated based on the length of employment (emphasis added)). In such a case, and provided the liquidated damages provision is itself enforceable, the trial court could correctly award the agreed-upon liquidated damages, because they would be "damages" within the meaning of Section 15.51(a). But this is not such a case.

The Agreement at issue here contains no liquidated damages provision. *See Flores v. Millenium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005) ("The term 'liquidated damages' ordinarily refers to an acceptable measure of damages that parties stipulate in advance *will be assessed* in the event of a contract breach." (emphasis added)). Its buyout provision merely states: "Physician may buy-out this non-compete covenant for a cash price of $100,000 which Physician agrees is

3

a reasonable price." This provision is permissive—it states that Tummala *may* pay the $100,000 cash price, which he presumably would have done if he believed that moving on to his next endeavor free from the threat of litigation was worth the $100,000 price tag. *See Sadler Clinic Ass'n*, 403 S.W.3d at 896–97 (distinguishing "price" from "damage"). But because Tummala nowhere *obligated* himself to pay the buyout amount in the event of a breach, the buyout amount cannot be construed as a liquidated damages provision that relieves TIPS of the burden to prove "damages" within the meaning of Section 15.51(a).

Moreover, TIPS offered no evidence of any actual damage it suffered as a result of Tummala's breach of the covenant not to compete. When Dr. Mark Murray was asked how much money TIPS lost as a result of Tummala departing TIPS and rounding at competitor hospitals, he was unable to answer and said that Everest would be in a better position to respond. The record thus reflects that TIPS relied solely on the buyout provision to persuade the trial court to award $100,000 in damages.

In short, the trial court erred in construing the permissive buyout provision as a liquidated damages provision, and there is no evidence to support the trial court's damage award. Accordingly, I respectfully concur in the Court's judgment only.

Rebeca Huddle
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Justice Huddle, concurring.