In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00028-CV
_____

**AUTOMATED INGREDIENT SYSTEMS, L.L.C., Appellant**

**V.**

**HILLER CARBON, LLC, Appellee**

_____

**On Appeal from the 253rd District Court**
**Liberty County, Texas**
**Trial Cause No. CV-18-13055**
_____

**MEMORANDUM OPINION**

This permissive interlocutory appeal arises from a contract-formation dispute involving a battle of forms in which appellee Hiller Carbon, LLC requested that appellant Automated Ingredient Systems, L.L.C. ("AIS") submit a proposal that involved the sale of fabricated equipment. In its sole issue, AIS questions whether Hiller Carbon agreed to the proposal in AIS's form and to the terms and conditions it attached to its form, which contain a provision waiving consequential damages.

1

AIS and Hiller Carbon filed cross-motions for partial summary judgment on AIS's affirmative defense of waiver, and the trial court granted Hiller Carbon's motion and denied AIS's motion. We affirm the trial court's order.

## BACKGROUND

After Hiller Carbon approached AIS about providing various equipment, Luke Ungashick, a member of AIS, sent Hiller Carbon an email and attached Revised AIS Proposal 216516R2-LU that described the equipment in detail, which included components of a coke pellet manufacturing system, that AIS offered to make and deliver, and included the price of $599,981.00, quantity, payment terms, and delivery dates.[1] Ungashick's email stated that "[i]f this proposal is acceptable to you and the project moves forward, would you be so kind as to simply shooting me a text or email? If I can enter this one earlier on our schedule . . ., I'll feel much more comfortable with the delivery schedule."

However, page 17 of 17 of Proposal 216516R2-LU specifically provides the following:

---

[1]We note that AIS submitted several proposals, but only two of its proposals are relevant to this appeal.

"**Customer Acceptance of Proposal:**
I hereby accept the proposal referenced in this document prepared by Automated Ingredient Systems, LLC. I acknowledge receipt of and accept the attached proposal terms and conditions of Automated Ingredient Systems, LLC.

Company: _____

Authorized Signature: _____
Print Name and Title: _____

Date: _____

Please return a copy of this entire signed proposal via mail, fax or email to:
     Automated Ingredient Systems, LLC
     240 Main Street
     Grandview, MO 64030
     Fax: 816-331-1181
     Luke_ungashick@ais-kc.com

Respectfully Submitted,
/s/ Luke Ungashick
Luke Ungashick, Manager
Automated Ingredient Systems, LLC"

In addition, the bottom of each page of the proposal states that "THIS PROPOSAL AND ACCEPTANCE ARE SUBJECT TO THE TERMS AND CONDITIONS ATTACHED TO THE QUOTATION."

On the very next page, a one-page document titled: "AUTOMATED INGREDIENT SYSTEMS, L.L.C. PROPOSAL - ADDITIONAL TERMS AND CONDITIONS" ("T&Cs"), were also attached to the email, and section 1 provides that:

3

[t]his proposal may be accepted by the BUYER only on the terms set forth herein by signing a copy of this proposal and delivering to SELLER at address set forth on the face hereof. No terms or conditions, whether written or oral, in addition to or different from those contained in this proposal shall be part of the agreement of the parties. …

Section 1 also states "[t]his proposal is the final, complete and exclusive statement of the offer and its acceptance by BUYER is hereby expressly limited to the terms and conditions hereof[,]" and "no subsequent agreements or communications in any way modifying any provisions of this offer shall be binding unless made in writing and signed by an authorized officer of the SELLER." Section 9 of the T&Cs contains a provision that expressly waives consequential damages and states as follows:

[AIS] shall not be liable under any circumstances for any indirect, special, incidental or consequential loss, damage or injury of any kind of nature, including but not limited to . . . loss of use of goods or any other property of [Hiller Carbon] or others, or loss of profits, products or production.

Furthermore, section 18 of the T&Cs contains a provision that any issues were to be governed by the laws of the State of Missouri, and "… that any claim or dispute arising out of or relating to this agreement must be resolved by either the Circuit Court of Jackson County, Missouri at Kansas City or the United States District Court for the Western District of Missouri." Finally, section 20 of the T&Cs contains a provision that expressly waives trial by jury.

4

However, it should be noted that no corporate representative of Hiller Carbon signed AIS's Proposal 216516R2-LU. Instead, Jesse Perez, Hiller Carbon Chief Financial Officer, sent Ungashick an email with an attached signed PURCHASE ORDER in the same amount of $599,981.00 P.O. NUMBER DTX-PP-001 "pursuant to AIS'[s] revised proposal 216516R2-LU." Perez's email asked that Ungashick "countersign under my signature on the attached, and we will put the down payment in line for payment within the next 7-10 days." Linda Ungashick, AIS's Manager and Chief Financial Officer, signed Hiller Carbon's purchase order DTX-PP-001 in the amount of $599,981.00. Purchase order DTX-PP-001 shows Hiller Carbon agreed to purchase "AIS EQUIPMENT AND COMPONENTS" and that the "(EQUIPMENT AND COMPONENT DETAILS ARE LISTED ON AIS PROPOSAL 216516R2-LU[.])" Purchase order number DTX-PP-001 does not indicate Hiller Carbon made any changes, objections, or complaints about Proposal 216516R2-LU.

AIS sent Hiller Carbon additional proposals for equipment, including Change Order # 01 in the additional amount of $55,500.00 (per AIS's Proposal 216561R1-LU) and Revised Proposal 216558R1-LU in the amount of $79,760.00, both of which contained the same general terms as Proposal 216516R2-LU along with the same T&Cs. Hiller Carbon sent AIS new purchase orders, Hiller Carbon's

5

PURCHASE ORDER Numbers DTX-PP-001 (Revision 1) in the same additional amount of $55,500.00 and DTX-PP-005 in the same amount of $79,760.00, which described the equipment as "AIS EQUIPMENT AND COMPONENTS" and indicated the "(EQUIPMENT AND COMPONENT DETAILS ARE LISTED ON …)" AIS Proposals 216516R2-LU, 216561R1-LU, and 216558R1-LU. Perez, Hiller Carbon's CFO, signed Hiller Carbon's PURCHASE ORDER Numbers DTX-PP-001 (Revision 1) and DTX-PP-005, but he never signed any of AIS's proposals or change order. That said, AIS did not countersign Hiller Carbon's PURCHASE ORDER Numbers DTX-PP-001 (Revision 1) or DTX-PP-005.

After AIS designed and supplied the equipment and components for the pellet system in Hiller Carbon's plant, the plant exploded. After the explosion, AIS sued Hiller Carbon for failing to fully pay Hiller Carbon's PURCHASE ORDER Numbers DTX-PP-001 (Revision 1) and DTX-PP-005 for services, materials, and equipment that AIS had manufactured and delivered in accordance with AIS's proposals. AIS alleged causes of action for breach of contract, quantum meruit, violating the Prompt Pay Act, to foreclose a mechanic's and materialman's lien secured by a bond, and it sought a declaratory judgment. Hiller Carbon denied liability, asserted affirmative defenses and counterclaims, and sought damages and attorney's fees. AIS filed a First Amended Original Answer denying liability and

6

asserting, among others, the affirmative defense of express waiver, which it based on the no-consequential damages provision in the proposal. The no-consequential damages provision under section 9 of AIS's T&Cs states:

> [AIS] shall not be liable under any circumstances for any indirect, special, incidental or consequential loss, damage or injury of any kind of nature, including but not limited to . . . loss of use of goods or any other product of [HILLER CARBON] or others, or loss of profits, products or production.

AIS and Hiller Carbon filed cross-motions for partial summary judgment on AIS's affirmative defense of express waiver, and both motions concerned whether the parties agreed to the T&Cs attached to AIS's proposal. In its Partial Motion for Summary Judgment Against AIS's Affirmative Defense of Express Waiver, Hiller Carbon argued that it's PURCHASE ORDER Numbers DTX-PP-001 (Revision 1) and DTX-PP-005 are the operative contracts and that AIS's T&Cs do not apply. Hiller Carbon argued the contracts at issue do not provide any waiver language limiting Hiller Carbon's rights and remedies and that the additional T&Cs, which are governed by Missouri law, are contrary to Texas and Missouri law. Hiller Carbon further argued AIS accepted the one-page Purchase Orders without any changes, the Purchase Orders address all the contract's essential terms, AIS cannot establish that Hiller Carbon agreed to be bound to the T&Cs or that the T&Cs were incorporated by reference into the Purchase Orders, and that AIS's affirmative defense of express

waiver should be dismissed because the Purchase Orders are binding, stand-alone contracts that do not include any waiver language.

AIS filed a Cross-Motion for Summary Judgment, arguing that Hiller Carbon's Purchase Orders incorporated AIS's proposals by direct reference and thus incorporated the additional T&Cs. AIS argued that its Proposals were sufficiently detailed price quotations that were firm offers under section 2.205, and the additional T&Cs, which were attached to the Proposals, specifically rejected additional or different terms and limited acceptance to the Proposals' terms. *See* Tex. Bus. & Com. Code Ann. § 2.205 (defining "firm offers"). AIS further argued that the contract was formed when Hiller Carbon accepted AIS's Proposal, which included the T&Cs, without rejecting or limiting the T&Cs. AIS also argued the Proposals and T&Cs are not separate documents but a single document inclusive of its attachments, and the T&Cs are specifically referenced as an attachment and mentioned on every single page of the Proposals.

AIS argued the breach of contract and breach of warranty damages Hiller Carbon seeks in its lawsuit are barred by the terms of the parties' agreements, that include the T&Cs, which state that AIS shall have no warranty obligations with respect to any goods furnished but not manufactured by AIS. AIS also claims that the remedies against AIS shall be limited to repair or replacement by AIS of any

goods furnished and labor performed by AIS, and per AIS's T&Cs warranty waiver provision AIS "**shall not be liable under any circumstances for any indirect, special, incidental or consequential loss, damage or injury of any kind of nature, including . . . loss of use of goods or any other property of BUYER or others, or loss of profits, products or production.**"

Hiller Carbon filed a Reply in Support of its Motion for Summary Judgment and Response to AIS's Motion for Summary Judgment, arguing that AIS's affirmative defense of waiver fails because Linda Ungashick, AIS's Manager and Chief Financial Officer, signed Hiller Carbon's purchase order DTX-PP-001 in the amount of $599,981.00, and by its conduct AIS agreed to Hiller Carbon's PURCHASE ORDER Numbers DTX-PP-001 (Revision 1) and DTX-PP-005, even though they were not countersigned by AIS, which are the contracts. Hiller Carbon argued that it did not accept AIS's Proposals by Hiller Carbon issuing its Purchase Orders, because AIS's Proposal and T&Cs stipulate that "**[t]his proposal may be accepted by the BUYER [HILLER CARBON] only on the terms set forth herein by signing a copy of this proposal and delivering to SELLER [AIS] at address set forth on the face hereof.**" Hiller Carbon explained the Proposals provided a signature block for Hiller Carbon to sign and complete, and it is undisputed that it did not sign the Proposals as required. Hiller Carbon argued that

9

its refusal to sign the Proposals is deemed a rejection of the Proposals, and its Purchase Orders are deemed as counteroffers. Hiller Carbon further argued that AIS's Proposals together with the T&Cs were not incorporated by reference into the Purchase Orders and that there is ample evidence to support its contractual and extra-contractual claims.

AIS filed a Reply to Hiller Carbon's Response to Plaintiff's Cross-Motion for Summary Judgment. AIS argued that Hiller Carbon was not required to sign the Proposals because AIS allowed other "'reasonable under the circumstances' options to serve as acceptance[,]" as indicated by Ungashick's offer email, which states "[i]f this proposal is acceptable to you and the project moved forward, would you be so kind as to simply shooting [sic] me a text or email?" AIS explained that Hiller Carbon responded by emailing Purchase Orders and stating that the signed Purchase Order was pursuant to AIS revised proposal 216516R1-LU, and AIS followed by emailing its confirmation of the order and including a copy of the T&Cs, which state "[t]his proposal may be accepted by the BUYER only on the terms set forth herein by signing a copy of this proposal and delivering to SELLER at address set forth on the face hereof." AIS argued the T&Cs are not an extraneous document but an essential and indispensable part of the Proposal that states on every page that "THIS PROPOSAL AND ACCEPTANCE ARE SUBJECT TO THE TERMS AND

CONDITIONS ATTACHED TO THE QUOTATION." AIS further argued that Hiller Carbon incorporated the entire Proposals into the Purchase Orders, not those that just concerned the details about the equipment and the components of the project.

The trial court conducted a hearing on AIS's Cross-Motion for Summary Judgment and Hiller Carbon's Partial Motion for Summary Judgment, during which AIS's counsel argued that Hiller Carbon's email shows it modified the method of acceptance, which was by text or email if acceptable, and that the UCC does not prevent such a modification because the offer and acceptance is intended to "remain flexible in its applicability to be enlarged as new media of communication develop or as the time-saving present day media come into general use." AIS's counsel noted that the parties transacted entirely through email, which constituted their course of dealing and established the relationship and contract. Hiller Carbon complained that AIS was asking the trial court to strike out portions of the T&Cs, like the requirement that Hiller Carbon sign the purchase order, despite the merger clause that states "[t]his proposal is the final, complete, and exclusive statement of the offer and its acceptance by the buyer[.]"

The trial court granted Hiller Carbon's Partial Motion for Summary Judgment Against AIS's Affirmative Defense of Express Waiver and denied AIS's Cross-

11

Motion for Summary Judgment. The trial court granted AIS's Motion for Permissive Appeal, finding that an immediate appeal of its order would likely materially advance the ultimate termination of the lawsuit. The trial court found its order involved the controlling question of law as to which there is a substantial ground for difference of opinion: "Did Plaintiff and Defendant agree to the terms and conditions attached to, and referenced in, Plaintiff's proposal?"

## ANALYSIS

In its sole issue, AIS argues that Hiller Carbon's Purchase Orders accepted AIS's Proposals and the attached T&Cs and agreed to be bound by the T&Cs. AIS argues that Hiller Carbon's Purchase Orders stated Hiller Carbon agreed to purchase the equipment and component details that are listed in AIS's Proposals, and thereby incorporated the Proposals and the attached T&Cs by reference. AIS maintains that Hiller Carbon's Purchase Orders are an acceptance of its Proposal under the Uniform Commercial Code ("UCC"). *See* Tex. Bus. & Com. Code Ann. § 2.207.

Hiller Carbon argues its Purchase Orders and not AIS's Proposals are the operative agreements and that its Purchase Orders did not incorporate AIS's T&Cs by reference. Hiller Carbon maintains that under the UCC and Texas common law an offer that requires a specific method of acceptance may only be accepted by the method provided, which in this case was by signing and returning AIS's Proposal.

12

Hiller Carbon argued that it did not accept AIS's Proposal but sent a Purchase Order, which was a counteroffer that AIS signed and accepted. Hiller Carbon maintains that while its Purchase Orders reference the equipment in AIS's Proposals, its Purchase Orders do not incorporate by reference AIS's Proposals or the separate T&Cs.

We review summary judgment orders de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The party moving for traditional summary judgment must establish that (1) no genuine issue of fact exists, and (2) it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a; *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). If the moving party produces evidence entitling it to summary judgment, the burden shifts to the non-movant to present evidence that raises a fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In determining whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). We review the summary judgment record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005); *see also Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 252 (Tex. 2023) (citation omitted).

When both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, the reviewing court considers the summary judgment evidence presented by both parties and determines all the questions presented. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). If the reviewing court determines that the trial court erred, the reviewing court renders the judgment the trial court should have rendered. *Id.* We must affirm the summary judgment if any grounds asserted in the motion are meritorious. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

Whether a contract is ambiguous is a question of law for the court and is subject to de novo review. *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 705 (Tex. 2008). To determine whether a contract is ambiguous, a court looks at the contract as a whole and considers the circumstances at the time of the agreement. *Sadler Clinic Ass'n, P.A. v. Hart*, 403 S.W.3d 891, 895 (Tex. App.—Beaumont 2013, pet. denied) (citation omitted). A court attempts to give effect to the parties' intent as expressed in the agreement. *Id.* An ambiguity does not exist simply because the parties offer conflicting interpretations of an agreement. *See id.* If an agreement can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law. *See id.*; *see also Zarkasha Enter., Inc. v. Old Republic Title Ins. Co. of*

*Conroe*, No. 09-20-00057-CV, 2021 WL 3774710, at *11 (Tex. App.—Beaumont Aug. 26, 2021, no pet.) (mem. op.) (citations omitted). However, if an agreement contains an ambiguity, summary judgment is improper because the interpretation of the contract is a fact issue. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1985); *Zarkasha Enter., Inc.*, 2021 WL 3774710, at *11.

In this appeal, the parties do not agree that Texas's version of the UCC applies to the parties' agreement. *See Summit Glob. Contractors, Inc. v. Enbridge Energy, Ltd. P'ship*, 594 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing Tex. Bus. & Com. Code Ann. § 2.102) (explaining when the UCC applies). "When the UCC applies, we do not consider common law principles that conflict with the UCC." *See ETC Intrastate Procurement Co., LLC v. JSW Steel (USA), Inc.*, 620 S.W.3d 168, 174 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (citation omitted). "To the extent there is no conflict, common law principles complement the UCC." *Id.* (citing Tex. Bus. & Com. Code Ann. § 1.103(b) ("Unless displaced by the particular provisions of this title, the principles of law and equity . . . shall supplement its provisions.")) (other citation omitted).

The parties present alternate theories upon which to render summary judgment, but they disagree about whether their dispute is governed by section 2.207 of the U.C.C. Tex. Bus. & Com. Code Ann. § 2.207. Yet even though Hiller Carbon

doesn't agree the issues involving the parties' dispute are governed by the U.C.C., it agrees that the parties' dispute "is about contract formation . . . and the UCC and Texas common law are consistent in all relevant respects."

A legally enforceable contract consists of: (1) an offer; (2) acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citations omitted); *see also USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018); *Sullivan v. Smith*, 110 S.W.3d 545, 548 (Tex. App.—Beaumont 2003, no pet.). To form a binding contract, the party to whom the offer is made must accept the offer in strict compliance with its terms and communicate such acceptance to the party making the offer for the acceptance to be binding. *See Parker Drilling Co.*, 316 S.W.3d at 73–74 (explaining that purported acceptance that changes or qualifies material terms constitutes a rejection and counteroffer instead of acceptance); *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 25–26 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

On the other hand, the formation of a contract under the UCC occurs "in any manner sufficient to show agreement, including conduct by both parties which

16

recognizes the existence of such a contract" and "[a]n agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined." Tex. Bus. & Com. Code Ann. § 2.204(a), (b). "Unless otherwise unambiguously indicated by the language or circumstances[,] . . . an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances[.]" *Id.* § 2.206(a)(1).

However, the broad acceptance allowed under the UCC set forth above is not applicable in this appeal because AIS's Proposals required strict performance in order to be accepted by Hiller Carbon. Here, the summary judgment evidence does not establish that Hiller Carbon accepted AIS's Proposals in strict compliance with the Proposals' terms and communicated such acceptance to the party making the offer such that acceptance was binding. *See Parker Drilling Co.*, 316 S.W.3d at 73–74; *Advantage Physical Therapy, Inc.*, 165 S.W.3d at 25–26; *see also In re Beyond The Arches, Inc.*, No. 09-04-126-CV, 2004 WL 1699900, at *3 (Tex. App.—Beaumont July 29, 2004, orig. proceeding) (mem. op.). AIS's Proposals, which included pricing, quantity, equipment descriptions, payment terms, and Luke Ungashick's signature, were sufficiently detailed to qualify as firm offers. *See ETC Intrastate Procurement Co., LLC*, 620 S.W.3d at 174 (citation omitted); *Tubelite*, 819 S.W.2d at 804; *see also* Tex. Bus. & Com. Code Ann. § 2.205. Yet, AIS's

17

Proposals unambiguously provided that Hiller Carbon could accept the Proposal **"only on the terms set forth herein by signing a copy of this proposal and delivering to SELLER**[,]**"** and thus, did not invite acceptance in any manner and by any medium reasonable under the circumstances. *Cf. Tubelite*, 819 S.W.2d at 803 (citing Tex. Bus. & Com. Code Ann. § 2.206(a)(1)). While AIS's Proposals are offers capable of acceptance by Hiller Carbon, the Proposals limited acceptance only to Hiller Carbon signing and returning the Proposal. *See Crest Ridge Constr. Grp., Inc. v. Newcourt Inc.*, 78 F.3d 146, 153 (5th Cir. 2011) (Benavides, J., concurring).

The record shows that AIS's Proposals limited acceptance to a specified manner and that Hiller Carbon never accepted AIS's Proposals because it did not perform the specific mode of acceptance; thus, no contract was formed. *See Criswell v. Deutsche Bank Nat'l Tr. Co. as Trustee for FFMLT Tr. 2005-FF2*, 747 F. App'x 984, 985 (5th Cir. 2019) (stating where an offer prescribes the manner of acceptance, its terms in this respect must be complied with to create a contract); *see also J.D. Fields & Co. v. U.S. Steel Int'l, Inc.*, 426 F. App'x 271, 280 (5th Cir. 2011) (reasoning that a price quote was an offer because it was void of any conditional language and did not limit acceptance to a specified manner); *J.D. Fields & Co. v. Shoring Engineers*, 391 F. Supp. 3d 698, 704 (S.D. Tex. 2019) (explaining that offer

18

in form of email did not limit acceptance to a particular method so assent to email would conclude the deal).

Additionally, contracts require mutual assent to be enforceable, and without evidence that Hiller Carbon signed and delivered the Proposals to AIS with the intent to be bound, AIS has failed to show its Proposals were binding contracts. *See Baylor University v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). The summary judgment evidence includes the affidavit of Martin Hiller, Hiller Carbon's CEO, who averred that after reviewing AIS's Proposal, Hiller Carbon issued a PURCHASE ORDER Number DTX-PP-001 as a counteroffer to AIS and asked that AIS accept the Purchase Order by providing a copy with a countersignature to indicate acceptance. Linda Ungashick, who was acting for AIS, signed and dated Hiller Carbon's PURCHASE ORDER Number DTX-PP-001. Hiller also explained that it issued PURCHASE ORDER Numbers DTX-PP-001 (Revision 1) and DTX-PP-005 as offers to AIS and that all the Purchase Orders identified the agreed-to terms, such as pricing, quantity, payout details, and completion deadlines. Hiller averred that Hiller Carbon never signed AIS's Proposals and never signed or consented to AIS's T&Cs.

Based on this record, we conclude that AIS's Proposals are not enforceable contracts, that Hiller Carbon's Purchase Orders are offers that AIS accepted, and that Hiller Carbon's PURCHASE ORDER Numbers DTX-PP-001, DTX-PP-001

19

(Revision 1) and DTX-PP-005 are enforceable, and are the legally enforceable contracts at issue.[2] *See Parker Drilling Co.*, 316 S.W.3d at 72–74; *Advantage Physical Therapy, Inc.*, 165 S.W.3d at 25–26; *see also Maverick Int'l, Ltd. v. Occidental Mukhaizna LLC*, No. 1:10CV782, 2011 WL 13134197, at *3 (E.D. Tex. Mar. 1, 2011) ("A buyer's purchase order submitted in response to a price quotation is usually deemed to be an offer.").

Further, we note that Hiller Carbon's Purchase Orders do not adopt or incorporate AIS's Proposals or the attached T&Cs, but instead merely describe the equipment as "AIS EQUIPMENT AND COMPONENTS" and indicate the "(EQUIPMENT AND COMPONENT DETAILS ARE LISTED ON …)" AIS Proposals 216516R2-LU, 216561R1-LU, and 216558R1-LU. The doctrine of incorporation by reference provides that "an unsigned paper may be incorporated by reference in the paper signed[.]" *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968); *see also Trico Marine Servs. Inc. v. Stewart & Stevenson Tech. Servs., Inc.*, 73 S.W.3d 545, 549 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding [mand.

---

[2]Although Linda Ungashick only countersigned Hiller Carbon's PURCHASE ORDER Number DTX-PP-001 on AIS's behalf, Hiller Carbon has shown that by AIS's conduct it agreed to Hiller Carbon's PURCHASE ORDER Numbers DTX-PP-001 (Revision 1) and DTX-PP-005, even though they were not countersigned by AIS, and AIS does not dispute that it performed under these other two Purchase Orders.

denied]). "The language used is not important provided the document signed by the defendant plainly refers to another writing." *Owen*, 433 S.W.2d at 166. Plainly referring to a document requires more than merely mentioning the document. *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.) (holding that unsigned document may be incorporated by reference into signed contract by referring to unsigned contract, however plainly referring to a document requires more than merely mentioning that document). The language in the signed document must show the parties intended for the other document to become part of the agreement. *Id.* Furthermore, the incorporated document must be referenced by name. *Stewart & Stevenson, LLC v. Galveston Party Boats, Inc.*, No. 01-09-00030-CV, 2009 WL 3673823, at *11 (Tex. App.—Houston [1st Dist.] Nov. 5, 2009, no pet.) (mem. op.); *Gray & Co. Realtors, Inc. v. Atl. Hous. Found. Inc.*, 228 S.W.3d 431, 436 (Tex. App.—Dallas 2007, no pet.).

"[A]s a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where, . . . the provision to which reference is made has a reasonably clear and ascertainable meaning." *JS & H Constr. Co. v. Richmond Cnty. Hosp. Auth.*, 473 F.2d 212, 215 (5th Cir. 1973). "However, merely referencing another document, without more, 'does not incorporate the *entire* document when the language used in the incorporation clause does not indicate the

21

parties' intent to do so.'" *Ihde v. HME, Inc.*, No. 4:15-CV-00585-CAN, 2016 WL 11372445, at *4–5 (E.D. Tex. June 16, 2016) (citation omitted) (holding a Subcontract Agreement's Arbitration Clause was not incorporated by reference because the Purchase Order's language limited the Subcontract Agreement to the job's specifications); *see Valero Mktg. & Supply Co. v. Baldwin Contracting Co., Inc.*, No. CIVA-H-09-2957, 2010 WL 1068105, at *4 (S.D. Tex. Mar. 19, 2010) (holding that Sales Acknowledgment that makes reference to the General Terms and Conditions does not contain language that clearly and expressly state that the agreement is subject to the General Terms but reflects an objective intent to incorporate the General Terms only for a limited purpose that all quoted prices are subject to the General Terms); *cf. Castillo Info. Tech. Servs., LLC v. Dyonyx, L.P.*, 554 S.W.3d 41, 46–47 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (explaining that parties intended to enter into an agreement consisting of three documents and construed those documents together where parties executed a Consultant Agreement, which included an attached Statement of Work, and the Purchase Order referenced the Consulting Agreement and included language mirroring the statement of work).

Hiller Carbon's Purchase Orders describe the equipment to be purchased as "AIS EQUIPMENT AND COMPONENTS" and merely reference that the "(EQUIPMENT AND COMPONENT DETAILS ARE LISTED ON …)" AIS

22

Proposals 216516R2-LU, 216561R1-LU, and 216558R1-LU. Hiller Carbon's Purchase Orders reference to noncontractual materials, such as equipment and component details listed on AIS's Proposals, is not enough to establish that the parties intended to incorporate by reference AIS's entire Proposal that Hiller Carbon never signed or its attached T&Cs, which are not referenced by name in the Purchase Orders. *See Bob Montgomery Chevrolet, Inc.*, 409 S.W.3d at 189; *Stewart & Stevenson, LLC*, 2009 WL 3673823, at *11; *Gray & Co. Realtors, Inc.*, 228 S.W.3d at 436. Rather, Hiller Carbon's Purchase Orders reference AIS's Proposals for the limited purpose of identifying the particular equipment and components that Hiller Carbon was offering to purchase. Without a clear manifestation that the parties intended for AIS's Proposals and attached T&Cs to become part of the contract, we cannot conclude that AIS's Proposals and attached T&Cs, which include the express waiver of consequential damages, were incorporated into the agreed terms of the parties' contract by reference. *See Ihde*, 2016 WL 11372445, at *4–5; *Valero Mktg. & Supply Co.*, 2010 WL 1068105, at *4.

## CONCLUSION

We hold the trial court correctly determined that Hiller Carbon's Purchase Orders do not incorporate by reference AIS's Proposals and attached T&Cs. Accordingly, since Hiller Carbon is not bound by AIS's T&Cs that include the

express waiver of consequential damages, we overrule AIS's sole issue and affirm the trial court's order granting Hiller Carbon's motion for partial summary judgment on AIS's affirmative defense of express waiver and denying AIS's motion.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on December 8, 2023
Opinion Delivered February 15, 2024

Before Golemon, C.J., Horton and Wright, JJ.