

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00276-CV

_____

CITY OF COLLEYVILLE, TEXAS, Appellant

V.

MART, INC., Appellee

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-353845-24

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

## I. INTRODUCTION

This is an accelerated, permissive appeal from the trial court's order granting in part Appellee Mart, Inc.'s motion for partial summary judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d), (f); Tex. R. App. P. 28.1. The trial court's order declared that the liquidated-damages provision in a contract between Mart and Appellant City of Colleyville is an unenforceable penalty.

We granted the City's petition for permissive appeal to determine whether the trial court erred by declaring that the liquidated-damages provision is an unenforceable penalty. *See* Tex. R. App. P. 28.3. Because the City did not satisfy its burden to show that the amount of liquidated damages called for is a reasonable forecast of just compensation, we will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On February 7, 2022, the City and Mart entered into a construction services agreement (Contract) for renovations related to the City's senior center (the Project).[1] The Contract contained the following relevant provisions:

- [The City] agrees to pay [Mart] for all services authorized in writing and properly performed by [Mart] in a total amount not to exceed [three million four hundred and thirty-one thousand and no/100 dollars] ($3,421,000.00)."

---

[1]The Contract incorporated other "Contract Documents," including the City's plans, invitation for bid, and written notice to proceed.

- "If discrepancies are found that may impact construction of the Project, it shall be [Mart's] obligation to seek clarification as to which requirements or provisions control before undertaking any work on that component of the Project."

- "The time for performance under this Agreement is Two Hundred and Seventy (270) calendar days. Accordingly, [Mart] shall complete all work related to the Project on or before the 270th calendar day following the date of [the City's] written notice to proceed to [Mart]."

- "In the event [Mart's] performance of this Agreement is delayed or interfered with by acts of the [City] or others, [Mart] may request an extension of time for the performance of same as hereinafter provided, but shall not be entitled to any increase in fee or price, or to damages or additional compensation as a consequence of such delays."

- "No allowance of any extension of time, for any cause whatever (including an event of force majeure), shall be claimed by or granted to [Mart], unless (i) [Mart] shall have made written request to [the City] for such extension within forty-eight (48) hours after the cause for such extension occurred, and (ii) [the City] and [Mart] have agreed in writing that such additional time shall be granted."

- "[Mart] understands and agrees that time is of the essence of this contract, and that for each day of delay beyond the number of calendar days agreed upon for the completion of the work herein specified and contracted for (after due allowance for such extension of time as may otherwise be provided for extension of time herein), [the City] may withhold permanently from the Contract Price an amount equal to $5,000 per day, which the parties agree represents a reasonable estimation of the actual costs that would be incurred by the [City] in the event of such delay."[2]

The City issued its written notice to proceed on March 9, 2022, obligating Mart to complete the Project by December 4, 2022. However, after beginning

---

[2]This portion of the Contract—the liquidated-damages provision—is Section 7(D).

construction, Mart discovered that the City's plans and specifications were incomplete, inaccurate, or defective. Mart had to send numerous requests for information to the City's architect, seeking corrections or modifications to the plans.[3] Mart contended that it had to halt construction on the Project because of the plan's defects and that it had to wait on the City's architect to make corrections to the plans or provide alternative instructions.[4] By December 4, 2022, the Project remained uncompleted. In the course of the project, Mart submitted five change orders requesting various extensions of time. The City approved each of Mart's requests, and the Project was extended for a total of thirty-two days.

On February 17, 2023, the City notified Mart by letter of its intent to withhold liquidated damages pursuant to Section 7(D) of the Contract.[5] The relevant portions of the letter read:

> Section 7(D) of the Agreement states the City "may withhold permanently from the Contract Price an amount equal to $5,000 per day, which the parties agree represents a reasonable estimation of the actual costs that would be incurred by the City in the event of such delay."[ ] Mart requested, and the City agreed to two change orders granting you a

---

[3]Mart sent more than 130 requests for information to the City's architect. The City's architect submitted late responses to many of Mart's information requests, several of which were more than a month past due.

[4]The City "does not dispute that the corrections and modifications to the plans were necessary and that it was not possible for Mart to continue work on the Project until corrections were made."

[5]At the time of the City's letter, Mart was sixty days beyond the Contract's prescribed time for performance.

4

fourteen-day time extension.[ ] Yet even including these approved delays, Mart is [sixty] days past due. Pursuant to [S]ection 7(D), the City is entitled to withhold $300,000 in liquidated damages as of today. The Project was completed on December 29, 2023.

The City has had multiple conversations with you about the ongoing delays, including an in-person meeting during which you estimated a completion date of April 15, 2023. The purpose of this letter is to formally notify you that the City reserves the right to withhold the above amount and any additional amounts accrued after today and through the date of Project completion from the final contract price.

As stated in the Agreement, time remains of the essence. Please proceed with haste to complete the Project as agreed.

Following the City's letter, Mart continued submitting requests for information from the City's architect but made no additional requests for extensions of time. Because of the various delays, the Project was not completed until December 29, 2023.[6] Relying on the Contract's liquidated-damages provision, the City withheld $1,106,503.86 from Mart. Mart sued the City for (1) breach of contract, (2) suit on sworn account, (3) quantum meruit, (4) declaratory relief—that the liquidated-damages provision is an unenforceable penalty, and (5) attorney's fees. The City brought counterclaims against Mart for (1) breach of contract, (2) breach of warranties, (3) declaratory relief—that the liquidated-damages provision is enforceable, and (4) attorney's fees.

---

[6]The Project was completed 358 days beyond the Contract's prescribed time for performance.

5

Mart moved for partial summary judgment on its claims of (1) declaratory judgment, (2) breach of contract, and (3) suit on sworn account. With respect to its declaratory-judgment claim, Mart argued that the liquidated-damages provision is an unenforceable penalty because it was designed and intended as a penalty. In support of its argument, Mart identified various statements made by the City's officials and staff that referred to the provision as the City's right to "assess financial penalties."[7] Mart also maintained that, even if the provision was a properly designed liquidated-damages provision, it is still unenforceable because the actual damages incurred were much less than the liquidated damages imposed. Mart asserted that the City "faced little to no actual damages resulting from the delays."[8]

---

[7]Mart pointed to comments made by the City's mayor and assistant city manager regarding the liquidated damages being a penalty. The City's mayor stated—in a social media video—that the "contract includes penalties of $5,000.00 a day for not meeting the original deadline." He explained that the "penalty currently totals over a million dollars" and that the City had "stopped paying the contractor since the anticipated penalties will be more than what's left to pay on the contract." The assistant city manager sent Mart an email that stated "[t]he contract contains large daily penalties ($5,000 per day beyond 270 calendar days). This should motivate everyone on this email to make [the Project] a priority." Mart also pointed to the City's invitation for bid—which was incorporated in the Contract—that stated the City "reserves the right to assess financial penalties if the Bidder fails to complete the project as promised."

[8]Mart argued that the City (1) owns the property where the Project is located, (2) does not pay rent on the property, (3) does not pay taxes on the property, (4) has no other carrying costs on the property, and (5) does not charge monthly fees for the residents who use the senior center facility. With respect to the fees, Mart asserted that the senior center is free and generates little to no revenue—much less than $5,000 per day.

6

In response, the City argued that the parties had agreed that the "liquidated damages was a reasonable forecast of just compensation in the event of delay, as the actual costs and damages were incapable or difficult of estimation and time was of the essence regarding this project." As for damages, the City complained that it was "unable to use its Senior Center, a vital facility to [the City] and its citizens, for the entire time of the Project. Tax paying citizens of the City were deprived of the use of the property long beyond the timeframe authorized by the City Council on the citizens' behalf."

Following a non-evidentiary hearing, the trial court signed an order granting in part Mart's partial motion for summary judgment on its declaratory-judgment claim.[9] The trial court's order declared that "the liquidated[-]damages clause located in Section 7(D) of the Contract is an unenforceable penalty." The City moved to amend the trial court's order, requesting permission to appeal. Upon an agreed order, the trial court granted the City permission to appeal the summary-judgment declaration. The City filed a petition for permissive appeal with this court,[10] and we granted the petition.

---

[9]The trial court denied summary judgment on Mart's claims of breach of contract, suit on a sworn account, and quantum meruit. Following the trial court's denial of summary judgment on those claims, Mart filed an amended petition, removing its claims for suit on a sworn account and quantum meruit.

[10]In response to the City's petition, Mart requested that we consider the City's permissive appeal.

## III.  STANDARD OF REVIEW

We review a summary judgment de novo.  *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.  *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.  *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).  A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim.  *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

When, as here, the trial court does not specify the grounds relied upon in granting the motion for summary judgment, the reviewing court must affirm if any of the summary judgment grounds are meritorious.  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

## IV.  DISCUSSION

In a single issue, the City contends that because Mart did not satisfy its burden to show that the City's actual damages were much less than the liquidated damages imposed, the trial court erred by declaring that the liquidated-damages provision is an unenforceable penalty.  We disagree.  Because the City did not satisfy its burden to show that the liquidated damages is a reasonable forecast of just compensation, we

8

need not reach whether Mart met its burden to show an unbridgeable discrepancy between the City's actual damages and the Contract's liquidated damages.

## A. APPLICABLE LAW

Notwithstanding its otherwise wide regard for freedom of contract, Texas law reasonably limits damages for a contractual breach to "just compensation for the loss or damage actually sustained." *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952). Accordingly, courts "carefully review liquidated[-]damages provisions to ensure" that they adhere to that principle. *Atrium Med. Ctr., LP. v. Hous. Red C LLC*, 595 S.W.3d 188, 192 (Tex. 2020). A provision that violates the principle is deemed an unenforceable penalty. *Id.*

An enforceable liquidated-damages contract provision establishes an "acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach." *Id.* (quoting *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005)). Courts enforce liquidated-damages provisions when (1) "the harm caused by the breach is incapable or difficult of estimation," and (2) "the amount of liquidated damages called for is a reasonable forecast of just compensation." *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991); *see Atrium Med. Ctr.*, 595 S.W.3d at 192. When applying these first two rules, known as the *Phillips* prongs, courts examine the circumstances at the time the agreement is made; this inquiry may include the consideration of factual evidence. *See Atrium Med. Ctr.*, 595 S.W.3d at 192–93; *see also FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59,

9

69-70 (Tex. 2014). "The party seeking liquidated damages bears the burden of showing that the provision, as drafted, accounts for these two considerations." *Atrium Med. Ctr.*, 595 S.W.3d at 192.

But even when a liquidated-damages provision is "properly designed" under those two considerations, it is still unenforceable when "the actual damages incurred were much less" than the liquidated damages imposed, measured at the time of the breach. *See id.* at 192–93 ("Liquidated damages must not be punitive, neither in design nor operation."); *see also Phillips*, 820 S.W.2d at 788. In other words, even if a liquidated-damages provision satisfies the two *Phillips* prongs, when there is an "unbridgeable discrepancy" between the provision as written and the reality of its application, the provision cannot be enforced. *FPL Energy*, 426 S.W.3d at 72. The breaching party challenging the liquidated-damages provision must demonstrate this "unbridgeable discrepancy." *Atrium Med. Ctr.*, 595 S.W.3d at 193.

The ultimate question of whether a liquidated-damages provision is enforceable is a question of law for the court to decide. *FPL Energy*, 426 S.W.3d at 70.

## B. Unenforceable Penalty

With respect to the first *Phillips* prong—whether the harm caused by the breach is incapable or difficult of estimation—the City claims that "the estimated actual damages were difficult to quantify" because it is "impossible to predict what services the City will be unable to provide, or the taxable value of such services." Assuming satisfaction of the first prong, the City did not satisfy the second prong—that the

10

amount of liquidated damages was "a reasonable forecast of just compensation." *See Phillips*, 820 S.W.2d at 788; *Stewart*, 245 S.W.2d at 486.

The City's evidence that the amount of liquidated damages was a reasonable forecast of just compensation consists of one item: the Contract's liquidated-damages provision. The City points to the following language in the provision: "[the City] may withhold permanently from the Contract Price an amount equal to $5,000 per day, which the parties agree represents a reasonable estimation of the actual costs that would be incurred by [the City]." Relying on that provision, the City argues that Mart's agreement—that the liquidated damages was a reasonable estimation of the actual costs incurred by the City—is sufficient to satisfy the second prong and make the provision enforceable. We disagree.

The City has cited no authority for the proposition that the parties' agreement, standing on its own, is sufficient evidence that the amount of liquidated damages is a reasonable forecast of just compensation. *Cf. Atrium Med. Ctr.*, 595 S.W.3d at 192 (holding that a liquidated-damages amount in a contract was a reasonable forecast of just compensation when it was based on a percentage of the enforcing party's previous invoices); *BMB Dining Servs. (Willowbrook), Inc. v. Willowbrook I Shopping Ctr. L.L.C.*, No. 01-19-00306-CV, 2021 WL 2231258, at *5 (Tex. App.—Houston [1st Dist.] June 3, 2021, no pet.) (holding that a liquidated-damages provision in a lease agreement was a reasonable forecast of just compensation when based on a percentage of the total future rent due under the lease); *Baker v. Int'l Record Syndicate,*

11

*Inc.*, 812 S.W.2d 53, 55 (Tex. App.—Dallas 1991, no pet) (holding that a liquidated-damages provision in a contract under which a photographer was to take photos was reasonable based on previous amounts that the photographer had been paid for photo sessions and previous earnings for photos sold).

Apart from Mart's agreement to the provision, the City offered no evidence that the liquidated damages is a reasonable forecast of just compensation. The summary-judgment evidence—or lack thereof—shows that no document, data, study, or analysis went into the City's $5,000 per diem damages determination. For liquidated damages to be "reasonable forecasts," there must be at least some thought in their making. *See, e.g.*, *Garden Ridge, L.P. v. Advance Int'l., Inc.*, 403 S.W.3d 432, 439 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (noting that the party attempting to enforce the liquidated-damages clause "did not perform any actual studies on what costs it would incur due to vendor noncompliance" and "could not explain any specifics" as to how it came up with the figure).

It is unclear how the City calculated the per diem damages. For example, there is no evidence that the damages forecast was in some way derived from (1) the reduced services or lack of benefits to the City's citizens—such as having to offer "half of its regular programming due to lack of sufficient space"—or (2) the loss of income from non-residents who use the senior center and pay a fee. In other words, there is no articulated nexus between the amount of liquidated damages and the City's purportedly reasonable forecast of just compensation.

12

Instead, it appears that there is no rational basis for the $5,000 per diem damages and that the number was "simply chosen at random" without any relation to a reasonable forecast of just compensation. In other words, at the time of contracting, there seems to have been no attempt to tie the liquidated-damages provision to the anticipated damages that the City would incur in the event of a breach, and we are unable to ascertain how the City arrived at its $5,000 per diem damages. *See id.* Because the City put forth no evidence that shows the amount of liquidated damages was a "reasonable forecast of just compensation," the provision resembles a punitive measure to ensure Mart's timely completion of the Project.[11] *See FPL Energy, LLC*, 426 S.W.3d at 69.

Although the Contract expressly declares that the parties agreed to the difficulty of ascertaining actual damages and the reasonableness of the liquidated damages, there is no evidence before us to show that the parties actually attempted to determine damages or, in the alternative, fix liquidated damages that would be a reasonable forecast of just compensation. We therefore conclude that, at the time of contracting, the liquidated-damages provision did not reasonably forecast just compensation for a delay in the Project's completion. The City thus did not meet the second *Phillips* prong. Accordingly, we hold that the trial court did not err in its

---

[11]Although not a factor in our analysis of the second prong, we note that the City has repeatedly referred to the liquidated-damage provision as a "penalty," which further evidences its intended purpose—at the time of contracting—of being a punitive measure rather than a forecast of the City's just compensation.

summary-judgment declaration because the Contract's liquidated-damages provision—Section 7(D)—is indeed an unenforceable penalty.[12]

We overrule the City's sole issue.

## V. CONCLUSION

Having overruled the City's sole issue, we affirm the trial court's order declaring "that the liquidated damages clause located in Section 7(D) of the Contract is an unenforceable penalty."

/s/ Brian Walker

Brian Walker
Justice

Delivered: October 23, 2025

---

[12]Because we hold that the City did not satisfy the second prong, we do not determine whether, at the time of the alleged breach, an unbridgeable discrepancy existed between the actual damages and the liquidated damages. *See* Tex. R. App. P. 47.1

14